COMMONWEALTH vs. GEORGE J. ATCHUE, THIRD.

Suffolk. October 2, 1984. — November 19, 1984.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Search and Seizure*, Affidavit. *Probable Cause. Constitutional Law*, Search and seizure.

An affidavit was sufficient to justify the issuance of a search warrant under the "two-prong test" of *Aguilar* v. *Texas,* 378 U.S. 108 (1964), and *Spinelli* v. *United States,* 393 U.S. 410 (1969), where the fact that the informant was identified by name, place of residence, and date of birth, together with inferences which the magistrate could reasonably draw from this information, warranted the conclusion that the informant was credible, and where the informant's assertion of "first hand knowledge," coupled with specificity of the facts that he furnished, lent credence to the belief that he had personally observed the criminal activity he described. [345-349]

Failure by a police officer to state in his affidavit in support of a search warrant either the date he obtained a tip from an informant or the date the informant had received his information did not render the affidavit insufficient, where a reading of the affidavit suggested that the informant had provided fresh information about contraband presently being stored in a location, a bus terminal locker, which did not permit storage for a long period of time. [349]

INDICTMENTS found and returned in the Superior Court Department on August 18, 1980.

A pretrial motion to suppress evidence was heard by *James P. McGuire,* J. An indictment charging conspiracy to commit armed robbery was tried before *Walter E. Steele,* J., and a jury. Indictments charging, respectively, possession of a sawed-off shotgun and the carrying of a dangerous weapon were heard by *Steele,* J., sitting without a jury.

The case was reported by the Appeals Court for direct appellate review.

*Bruce Ferg* for the defendant.

*Michael J. Traft*, Assistant District Attorney, for the Commonwealth.

ABRAMS, J. The defendant appeals from the denial of his motion to suppress evidence.[1] The defendant asserts that the affidavit in support of a search warrant was insufficient to establish probable cause in that it: (1) failed to show the reliability and credibility of the sole informant, and (2) did not indicate on its face that the information supplied by the informant was timely. We reject these arguments and conclude that under the "two-prong test" of *Aguilar* v. *Texas*, 378 U.S. 108 (1964), and *Spinelli* v. *United States*, 393 U.S. 410 (1969), the affidavit justified the issuance of a search warrant.

The evidence on the motion to suppress included the search warrant, the supporting affidavit, sworn to on August 11, 1980, by a State police officer, and the return of the warrant. The affidavit stated in part: "I have information, based upon information received from one Patrick A. Stone 40 Lyman Road, Berlin, Massachusetts D.O.B. 10-21-53 that he has first hand knowledge that two shotguns which were stolen in Berlin, Massachusetts from the residence of [defendant's father] are in American Locker # 1336 located in the Greyhound Bus Terminal 10 St. James Avenue Boston.

"Patrick A. Stone further reports that the above mentioned stolen shotgun[s] have been altered so as the barrels are less than 18″ [eighteen inches] in length.

"Patrick A. Stone further states that in the above mentioned American Locker # 1336 located in the Greyhound Bus

---

[1] After trial by jury, the defendant was convicted of conspiracy to commit armed robbery. See G. L. c. 274, § 7. He was sentenced to a term of not more than ten years nor less than five years to be served at the Massachusetts Correctional Institution, Walpole.

After the conspiracy trial, see Mass. R. Crim. P. 9 (e), 378 Mass. 859 (1979), the defendant was convicted at a jury-waived trial of possession of a sawed-off shotgun, G. L. c. 140, § 131 (two indictments), and carrying a dangerous weapon, "to wit: nunchucks," G. L. c. 269, § 10 (*b*). This latter sentence is being served concurrently with the conspiracy sentence. A "nunchuck" (nunchaku) is two sticks of wood connected at one end by a length of chain. Nunchucks are also known as "kung fu sticks."

On appeal, the only error alleged by the defendant is the denial of his motion to suppress.

Terminal are one pair of kung fu sticks aka nun chucks aka klackers a dangerous weapon which is illegal." The affiant State police officer also stated that there was probable cause "to believe that the property hereinafter described as: 1: One Double Barrel Shotgun 12 [Gauge] Marked John P. Lovell Arms Co; 2: One Single Barrel Shotgun 12 [Gauge] Marked J. Stevens Arms Co.; 3: One Pair of Kung Fu Sticks AKA Nun Chucks AKA Klackers" would be found at the Greyhound Bus Terminal in Boston. A warrant was issued on August 11, 1980, and the police, executing a search of the Greyhound locker that same day, found a green athletic bag marked "Atchue," containing two sawed-off shotguns and one pair of kung fu sticks.

In ruling on the motion, the judge applied the traditional "two-prong test" of *Aguilar* v. *Texas*, 378 U.S. 108 (1964), and *Spinelli* v. *United States*, 393 U.S. 410 (1969). He concluded that because the informant was named and his place of residence and date of birth were supplied in the affidavit, such information was sufficient to support an inference of credibility, thus satisfying the "first prong of the '*Aguilar-Spinelli*' test." Moreover, he found that the named informant's description of the items to be seized was detailed enough to indicate to the issuing judge the underlying basis of the informant's knowledge. The specificity of the description "act[ed] to self-verify the informant's statements," thus meeting the reliability requirement of *Aguilar-Spinelli*. As to the defendant's claim that the affidavit was defective for failure to date the affiant's information, the judge determined that in view of the nature of the items to be seized, there was a substantial basis for concluding that the weapons would be found in the locker at the time of the search. We affirm.

At the outset of our analysis we set forth some of the general rules governing search warrants. The most basic limitation on the issuance of search warrants is the requirement that there be a showing of probable cause before a warrant may issue.[2] The

---

[2] In his supplemental brief, the defendant urges the retention of the *Aguilar-Spinelli* test as matter of State law. Because we conclude that the affidavit in this case satisfied the requirements of that test, we do not reach any issue

determination of probable cause is not a determination of guilt beyond a reasonable doubt. *Commonwealth* v. *Alessio*, 377 Mass. 76, 82 (1979). We thus allow "a certain leeway or leniency in the after-the-fact review of the sufficiency of applications for warrants." *Commonwealth* v. *Corradino*, 368 Mass. 411, 416 (1975). Indeed, this court has often noted the appropriateness of drawing reasonable inferences and relying on common knowledge in determining whether a warrant is supported by probable cause. See, e.g., *Commonwealth* v. *Alessio, supra* at 82; *Commonwealth* v. *Moran*, 353 Mass. 166, 170-171 (1967).

In reviewing an affidavit based on an informer's tip, we take into consideration the dangers inherent in an affidavit founded on an unknown informer's tip. The *Aguilar-Spinelli* standard requires that affidavits for a search warrant contain sufficient indication of the accused criminal's activity so that the magistrate issuing the warrant "may know that he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation." *Spinelli* v. *United States, supra* at 416.

Affidavits for search warrants also "must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. . . . Recital of some of the underlying circumstances in the affidavit is essential if the magistrate is to perform his detached function and not serve merely as a rubber stamp for the police. However, . . . the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner. . . . [T]he resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *United States* v. *Ventresca*, 380 U.S. 102, 108-109 (1965). See *Commonwealth*

---

concerning the standard of probable cause under State law. Cf. *Illinois* v. *Gates*, 462 U.S. 213, reh'g denied, 463 U.S. 1237 (1983). We have under advisement a case raising the issue of the appropriate State standards to be applied under State law in reviewing a magistrate's determination of probable cause. *Commonwealth* v. *Upton*, 390 Mass. 562 (1983), rev'd and remanded, 466 U.S. 727 (1984), reargued here, October 2, 1984.

v. *Stewart*, 358 Mass. 747, 750 (1971). Lastly, "[t]he suffi-
ciency of the affidavit is to be decided on the basis of a con-
sideration of all of its allegations as a whole, and not by first
dissecting it and then subjecting each resulting fragment to a
hypertechnical test of its sufficiency standing alone." *Id.* at 751.

We turn to the affidavit as a whole. The defendant asserts
that "[t]he mere fact that [the informant] was labelled by his
name and birth date did not clothe him with any particular
credibility or automatically cast him in the role of a citizen
informer." But we are not confronted with that "mere fact"
alone: "That a person is named . . . is *one factor* which may
be weighed in determining the sufficiency of an affidavit"
(emphasis supplied). *United States* v. *Spach*, 518 F.2d 866,
870 (7th Cir. 1975). See *Commonwealth* v. *Fleurant*, 2 Mass.
App. Ct. 250, 253 (1974) ("The specificity of the information
supplied, the affiant's occasion to question the informant, and
the fact that the informant was named and was not a paid
informer are all relevant circumstances in determining the in-
formant's credibility").[3] A named and identified person is not
a "faceless informer" whose inarticulated self-interest would
render his information automatically suspect. See *United States*
v. *Bigos*, 459 F.2d 639, 641-642 (1st Cir.), cert. denied sub
nom. *Raimondi* v. *United States*, 409 U.S. 847 (1972); *Com-
monwealth* v. *Corradino, supra* at 414 n.5; *Commonwealth* v.
*Martin*, 6 Mass. App. Ct. 624, 627-628 (1978), cited with
approval in *Commonwealth* v. *Bowden*, 379 Mass. 472, 477
(1980).

"A serious charge . . . when volunteered by an identified
party . . . carries with it indicia of reliability of the informant."
*United States* v. *Wilson*, 479 F.2d 936, 940 (7th Cir. 1973).
Other courts have noted the distinction between the "govern-
ment informant considered in *Aguilar* and *Spinelli*" and a named

---

[3] The affidavit gives rise to the inference that the informant's statements
could be viewed as against his penal interest. See *Commonwealth* v. *Nowells*,
390 Mass. 621, 626 (1983); *Commonwealth* v. *Vynorius*, 369 Mass. 17,
21 (1975); *United States* v. *Harris*, 403 U.S. 573, 583 (1971). Statements
meeting the test of declaration against penal interest may be considered in
determining probable cause.

informant who was possibly an eyewitness to or participant in the crime being investigated. *United States* v. *Unger*, 469 F.2d 1283, 1287 n.4 (7th Cir. 1972), cert. denied, 411 U.S. 920 (1973). See *United States* v. *Rueda*, 549 F.2d 865, 869 (2d Cir. 1977) (requirement of known reliability should be relaxed when dealing with a named informant who participated in or witnessed a crime). The defendant asks us to adopt a separate standard of credibility for named participants in a crime which differs from the standard to be applied to named victims of or eyewitnesses to a crime. We decline to do so.[4] We conclude that the affidavit at issue and "inferences which reasonably could be drawn from the information by a judicial mind" warrant the conclusion that the informant was credible. *Commonwealth* v. *Stewart, supra* at 752.

Further, "[w]hen an informer provides information which is specific and detailed, it is more probable that the information came from a reliable source than when the information is . . . the type of information which may have been picked up as a rumor in a bar." *United States* v. *Spach, supra* at 870. See *United States* v. *Wilson*, 479 F.2d 936, 940 (7th Cir. 1973); *United States* v. *Unger, supra* at 1286-1287. "Detailed information may sometimes imply that the informant himself has observed the facts." *Spinelli* v. *United States, supra* at 425 (White, J., concurring). The informant's assertion of "first hand knowledge" coupled with the specificity of the facts he furnished lent credence to the belief that "criminal activity was evidenced from personal observation." *United States* v. *Unger, supra* at 1286. That belief, in turn, was "a sufficient basis upon which to predicate a finding of reliability and support a finding of probable cause." "[T]he [judge], by exercising his common sense and balancing the probabilities, could infer from the face of the affidavit that the [informant's] information

---

[4] The fact that an informant is identified, whether as a participant in, victim of, or eyewitness to a crime, permits the defendant more easily to challenge the truth of the statements in the affidavit. See *Franks* v. *Delaware*, 438 U.S. 154, 170 (1978); *Commonwealth* v. *Nine Hundred & Ninety-two Dollars*, 383 Mass. 764, 775-776 (1981). Hence, we see no reason to distinguish among named persons.

was based on personal observation." *Commonwealth* v. *Martin, supra* at 628. See *United States* v. *Harris*, 403 U.S. 573, 589 (1971) (Harlan, J., dissenting); *Commonwealth* v. *Aarhus*, 387 Mass. 735, 744 (1982); *Commonwealth* v. *Genest*, 371 Mass. 834, 837 (1977). In short, the affidavit met the *Aguilar-Spinelli* requirements of credibility and reliability.

The defendant's final challenge to the sufficiency of the affidavit is that the affiant officer failed to state the date on which he obtained the tip from the informant and the date on which the informant had received his information. Well-established is the principle that the "proof must be of facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time." *Sgro* v. *United States*, 287 U.S. 206, 210 (1932). But it is also true that "[w]hether the proof meets this test must be determined by the circumstances of each case." *Id.* at 210-211.

The defendant contends that the only indication of timeliness in the warrant was the informant's use of the present tense in telling the officer that the weapons "*are* in American Locker # 1336" at the Greyhound Terminal (emphasis supplied). He argues that "[t]he present tense is suspended in the air; it has no point of reference." *Rosencranz* v. *United States*, 356 F.2d 310, 316 (1st Cir. 1966). We disagree. Here, the requisite point of reference was the typically short interval of time for which lockers at bus terminals are rented — a matter of common knowledge.[5]

A common sense reading of the whole affidavit suggests that the informant supplied fresh information about contraband in a location which did not permit storage for long periods of time. Thus, the magistrate did not "reach for external facts and . . . build inference upon inference in order to create a reasonable basis for his belief that a crime [was] presently being committed." *Rosencranz* v. *United States, supra* at 317. See *Commonwealth* v. *Alessio, supra* at 82.

---

[5] We observe that it is a fact lying within that body of common knowledge on which a judge may rely in evaluating an affidavit for timeliness of probable cause.

We hold that the search warrant was properly issued in conformity with *Aguilar-Spinelli*. We therefore conclude that the judge correctly denied the motion to suppress.

*Judgments affirmed.*