## Commonwealth vs. Benjamin Lee Peterson.

No. 02-P-1437.

Plymouth. November 3, 2003. - August 18, 2004.

Present: Perretta, Smith, & Cypher, JJ.

*Search and Seizure,* Affidavit, Probable cause. *Practice, Criminal,* Affidavit.

This court concluded that the information in an affidavit accompanying a
  police officer's application for a warrant to search the criminal defendant's
  house for unlawfully possessed weapons and ammunition was not unreli-
  able by reason of the fact that the information was based upon hearsay,
  where the hearsay statements set out in the affidavit were reliable
  [634-636]; moreover, the affidavit set forth facts sufficient to justify a war-
  rant, where information concerning the defendant's possession of firearms
  was accompanied by information showing that the defendant was a fugi-
  tive from justice from Tennessee who, on the date of the affidavit, had
  used a firearm against Massachusetts police officers to resist arrest
  [636-637].

INDICTMENTS found and returned in the Superior Court Department on January 16, 2001.

A pretrial motion to suppress evidence was heard by *Richard J. Chin,* J.

An application for leave to prosecute an interlocutory appeal was allowed by *Martha B. Sosman,* J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by her to the Appeals Court.

*Kelly-Anne DeFao,* Assistant District Attorney, for the Commonwealth.

*Peter M. Onek,* Committee for Public Counsel Services, for the defendant.

PERRETTA, J. On the morning of December 8, 2002, State police officers searched the defendant's apartment pursuant to a warrant authorizing the seizure of unlawfully possessed weapons and ammunition. Among the items seized were two shotguns,

one of which was loaded; a revolver; a rifle fitted with a scope; and assorted boxes of ammunition. Prior to trial on numerous indictments,[1] the defendant filed a motion seeking to suppress the evidence seized pursuant to the warrant. The judge allowed the motion on the stated basis that the affidavit in support of the application for the warrant failed to establish that any possession of firearms by the defendant was illegal or that any weapons would be found in his apartment. On the Commonwealth's appeal pursuant to Mass.R.Crim.P. 15(a)(2), as appearing in 422 Mass. 1501 (1996), our review of the affidavit (see *Commonwealth* v. *Allen*, 406 Mass. 575, 578 [1990] ["[i]n reviewing a finding of probable cause, only the facts revealed on the face of the affidavit and any reasonable inferences therefrom may be considered"]) leads us to conclude that the affidavit set out sufficient probable cause to warrant a search of the defendant's apartment. Consequently, we reverse the order allowing the defendant's motion to suppress.

1. *The affidavit.* We recite in detail the facts set out in the affidavit submitted in support of the application for a search warrant. On December 7, 2000, State police Officer Dean A. LeVangie received a telephone call from Officer John Blankenship of the Carter County Sheriff's Department in Tennessee. Blankenship informed LeVangie that he (Blankenship) had received information that the defendant, a Tennessee fugitive from justice on charges of aggravated assault and rape, was residing at 581 South Avenue in Whitman. Blankenship informed LeVangie that he had received this information from the defendant's bondsman who, in turn, had acquired his information from the defendant's mother. He also warned LeVangie that the defendant should be considered dangerous, and advised that the defendant might be armed, and if confronted by law enforcement officials, "would most definitely put up a fight."

---

[1]In all, the indictments set out eighteen charges against the defendant: armed assault with intent to murder; two counts of assault by means of a dangerous weapon; assault and battery by means of a dangerous weapon; two counts of unlawful possession of a firearm; three counts of refusing to stop for a police officer, three counts of operating a motor vehicle to endanger; four counts of unlawful possession of a firearm, rifle, shotgun, or ammunition without a firearm identification card; unlawful possession of a controlled substance; and leaving the scene of an accident after causing property damage.

Later that day, State police officers began a surveillance of the area of 581 South Avenue. The surveillance officers saw a man, later identified as the defendant, leave the building located at 581 South Avenue in a truck bearing Tennessee license plates. A chase ensued and ended when the defendant drove his truck into the parking lot of a retail store, circled the lot, and drove his truck into a State police cruiser in an attempt to escape. Unable to evade the police, the defendant, holding a handgun, jumped from his vehicle. He was ultimately apprehended, although not before sustaining a gunshot wound.

In the meantime, LeVangie and Blankenship had another conversation during which Blankenship disclosed that it was the defendant's brother-in-law, Ralph Gent, a Tennessee law enforcement officer, who had informed Blankenship that the defendant might be armed with a handgun. LeVangie then contacted and spoke directly with Gent, asking him about the defendant's history of weapons possession. Gent told LeVangie that the defendant always talked about having guns and that according to Gent's wife and mother-in-law (the defendant's sister and mother), the defendant was an avid hunter who liked to "dabble in guns" and who "always had guns."[2]

Based on this information, the police sought and obtained a warrant to search the defendant's apartment for unlawfully possessed weapons and ammunition. Numerous firearms and boxes of ammunition were found and seized.

2. *Discussion.* Before taking up the question whether the affidavit set out facts sufficient to show probable cause to search the defendant's apartment, we first consider whether, as the defendant claims, we must disregard the hearsay statements of his relatives concerning his possession of guns. In so doing, we begin with the well-established premise that hearsay information may provide a basis for probable cause if it is deemed reliable under the *Aguilar-Spinelli* standard. See *Aguilar* v. *Texas*, 378 U.S. 108, 114 (1964); *Spinelli* v. *United States*, 393 U.S. 410, 414-415 (1969); *Commonwealth* v. *Upton*, 394 Mass. 363, 374-375 (1985).

---

[2]Although the affidavit recites that Gent was at his home with his wife and mother-in-law at the time of this conversation, it is not clear from the face of the affidavit that the two women heard Gent's conversation with LeVangie.

Contrary to the defendant's argument, information is not per se unreliable by reason of the fact that it is based upon hearsay. Rather, hearsay statements set out in an affidavit may be credited so long as each level of hearsay is independently tested and found reliable under the *Aguilar-Spinelli* standard. See, e.g., *Commonwealth* v. *Stewart*, 358 Mass. 747, 751-752 (1971); *Commonwealth* v. *Grzembski*, 393 Mass. 516, 521 (1984); *Commonwealth* v. *Harding*, 27 Mass. App. Ct. 430, 436 (1989). See generally Smith, Criminal Practice & Procedure § 208, at 149 n.4 (2d ed. 1983) and at 198-200 n.4.15 (Supp. 2004). For the following reasons, we conclude that the hearsay statements of the defendant's relatives set out in the affidavit are reliable.

In the first instance, Gent told LeVangie that the defendant "always talked about having guns." See *Commonwealth* v. *Lapine*, 410 Mass. 38, 41 (1991) (basis of knowledge shown when informant heard defendant's conversation); *Commonwealth* v. *Crawford*, 410 Mass. 75, 78-79 (1991) (basis of knowledge shown when defendant told informant of plan). As for the statements made by the defendant's sister and mother, which were related by Gent to LeVangie, we acknowledge that the affidavit did not set out facts reciting the basis of their statements concerning the defendant's history with weapons. However, we conclude that their relationship with the defendant permits the inference that their knowledge was based upon their interactions with and personal observations of the defendant. Cf. *Commonwealth* v. *Grzembski*, 17 Mass. App. Ct. 1029, 1031, *S.C.*, 393 Mass. 516 (1984) (step-brother in position affording opportunity for reliable knowledge).

These statements also have veracity. They were voluntarily made to the police by private citizens, members of the defendant's family, whose names, addresses, and telephone numbers were known or readily available to the police. See *Commonwealth* v. *Love*, 56 Mass. App. Ct. 229, 232 (2002), and authorities therein cited (requirements of reliability governing analysis of anonymous informant's trustworthiness relaxed when information is provided by named and identified person). There is also the fact that information provided to the police by Gent and the defendant's mother, concerning the defendant's Massachusetts address and the likelihood that he possessed a

handgun, was verified by the police in the course of their surveillance, pursuit, and arrest of the defendant. See *Commonwealth* v. *Harding*, 27 Mass. App. Ct. at 436, and cases therein cited.

Concluding that the statements made by the defendant's family members were reliable, we turn next to the defendant's claim that the affidavit nonetheless failed to set out facts sufficient to justify a warrant authorizing a search of his apartment. As earlier noted, the judge allowed the defendant's motion on the stated basis that the affidavit failed to set out facts sufficient to show either that the defendant's possession of firearms was illegal or that any weapons, legally or illegally possessed, would be found in his apartment.

To satisfy the probable cause standard for the issuance of a search warrant, the facts and circumstances set forth in the affidavit must provide a substantial basis to support a conclusion "that the items sought are related to the criminal activity under investigation, and that they reasonably may be expected to be located in the place to be searched." *Commonwealth* v. *Donahue*, 430 Mass. 710, 712 (2000), quoting from *Commonwealth* v. *Cinelli*, 389 Mass. 197, 213, cert. denied, 464 U.S. 860 (1983). We read the affidavit "in an ordinary, commonsense manner, without hypertechnical analysis." *Commonwealth* v. *Cruz*, 430 Mass. 838, 840 (2000), citing *United States* v. *Ventresca*, 380 U.S. 102, 109 (1965), and *Commonwealth* v. *Blake*, 413 Mass. 823, 827 (1992).

In *Commonwealth* v. *Nowells*, 390 Mass. 621, 627 (1983), relied upon by the judge in allowing the defendant's motion, the court stated that the "ownership or possession of a handgun (or a rifle) is not a crime and standing *alone* creates no probable cause" (emphasis added). Here, however, the information concerning the defendant's possession of firearms did not stand alone. It was accompanied by information showing that the defendant was a fugitive from justice from Tennessee who, on the very date of the affidavit, had used a firearm against Massachusetts police officers to resist arrest. We think this information more than sufficient to show that the defendant had little, if any, regard for life or law and was most probably not authorized either to carry or possess firearms within our Commonwealth.

See G. L. c. 140, §§ 129B(1)(ix) and 131(*d*)(vii), prohibiting the issuance of a firearm identification card or a license to carry firearms to persons subject to an outstanding arrest warrant.

We also think that the information provided by Tennessee authorities, the defendant's family members, and Massachusetts police officers, all as detailed in the affidavit that we read in a commonsense manner rather than in a hypertechnical fashion, provided the police with ample probable cause to search the defendant's apartment for weapons. In our view, the information set out in the affidavit allows for the reasonable inference that the defendant, a fugitive from justice in Tennessee for violent crimes who was reliably reported to possess firearms and who used a firearm against police officers attempting to arrest him on a fugitive warrant, probably kept additional and easily accessible weapons at his apartment in Massachusetts. See 2 LaFave, Search and Seizure § 3.7(d), at 384-385 (3d ed. 1996) ("instrumentalities are also likely to be in the offender's home, especially when there is reason to believe he would keep or make use of them there").

3. *Conclusion.* It follows from what we have said that the order allowing the defendant's motion to suppress is reversed. The matter is remanded to the Superior Court for further proceedings during which the evidence seized pursuant to the warrant shall, upon proffer by the Commonwealth, be admitted in evidence.

*So ordered.*