## Commonwealth *vs.* Robert H. Zorn.

No. 05-P-373.

Norfolk. January 13, 2006. - May 3, 2006.

Present: Rapoza, Green, & Katzmann, JJ.

*Evidence,* Hearsay. *Practice, Criminal,* Hearsay, Affidavit. *Search and Seizure,* Probable cause, Warrant, Affidavit.

This court concluded that there was sufficient evidence of reliability of information in the affidavit of a State trooper, made as part of an application for a search warrant, to establish probable cause to search the criminal defendant's residence, even though the trooper received all of her information through "totem pole" hearsay statements of the victim and her mother, where the victim's observations satisfied the basis of knowledge requisite for reliability of such statements, and where the other informants based their knowledge on the statements of the victim, who was known to the police and who claimed she was the victim of a serious crime [231-234]; where the presumptive veracity of the victim was only strengthened by the level of detail in her statements [234-235]; and where the statements of the mother also manifested indicia of reliability [235-236].

COMPLAINTS received and sworn to in the Dedham Division of the District Court Department on May 16, 2003.

A pretrial motion to suppress evidence was heard by *James H. Wexler,* J.

An application for leave to prosecute an interlocutory appeal was allowed by *Robert J. Cordy,* J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him to the Appeals Court.

*Pamela Alford,* Assistant District Attorney, for the Commonwealth.

*Diane M. Jeffers* for the defendant.

KATZMANN, J. A criminal complaint was filed on May 16, 2003, charging the defendant, Robert H. Zorn, with indecent assault and battery on a child under the age of fourteen, along

with several other charges. Upon reconsideration, a District Court judge allowed the defendant's motion to suppress all evidence discovered by means of a search warrant executed at the defendant's residence. The judge ruled that the information in the warrant affidavit was unreliable because the affiant received all her information through so-called "totem pole" hearsay and never spoke with the victim or her mother. We conclude that there was sufficient evidence of reliability to support probable cause and thus reverse the suppression order.

*Background.* On April 11, 2003, Massachusetts State police Trooper Laura Hayes filed an application for a search warrant to search the defendant's residence at 144 Ledgewood Road in Dedham. Trooper Hayes submitted a nine-page affidavit in support of the application. Much of the information averred by Trooper Hayes came to her through two independent chains of hearsay reporting the victim's account. The validity of Trooper Hayes's reliance on this hearsay is the heart of the dispute in this case.

In the affidavit, Trooper Hayes stated that she received a copy of a Department of Social Services (DSS) statement under G. L. c. 119, § 51A, on or about April 10, 2003.[1] The statement had been written by DSS screener Catherine Murdock, who took the information from the mother of the alleged victim, an eight year old girl.[2] Murdock wrote that the mother filed a report with DSS on or about April 9, 2003, claiming that approximately six weeks earlier, the defendant, the victim's paternal grandfather, had sexually assaulted the victim when she stayed at his home.

As recited in the 51A statement and recounted in the search warrant affidavit, the mother stated that on April 6, 2003, a piece of paper fell out of the pocket of the victim's twelve year old sister. The paper had the Internet address of a pornographic website written on it. The victim's sister told her parents that she had gotten the Internet address from the victim, who had said that she and the defendant had visited the website together

---

[1]This type of statement is one part of a statutory scheme that requires certain parties to report suspected incidents of child abuse to DSS, see G. L. c. 119, § 51A, which investigates and potentially forwards the information to law enforcement, see G. L. c. 119, § 51B.

[2]The names of the alleged victim and her sister have been impounded.

on the night she and her sister had stayed at his residence. The victim's sister also stated that she and the victim subsequently had tried to reach the website again on the defendant's computer, but were unsuccessful. The victim confirmed this account to her mother, stating that when she and her sister had stayed at the defendant's residence in February, 2003, the defendant had showed her "porn sites" while they were alone in his basement.[3] She also stated that she had sat on the defendant's lap while viewing the websites and that he had "touched [her] private spots under [her] panties, rubbing [her] with one of his fingers." She stated that the two of them had been in the basement from 11:00 P.M. to 2:00 A.M., after which the defendant had instructed her not to tell anyone about the incident. The mother also reported to Murdock that she had brought the victim to see Dr. Thomas S. Doherty, a therapist the family had used in the past, and that the victim had repeated the same story to Dr. Doherty, who had referred them to DSS.

Trooper Hayes contacted Murdock on April 11, 2003, and Murdock confirmed that she had conducted the intake on this case and that the mother had relayed the information voluntarily. Murdock also indicated that Erin Senges, an investigator for DSS, had been assigned to investigate the complaint of sexual abuse.

Trooper Hayes stated that after speaking with Murdock, she next spoke with Senges. Senges told Trooper Hayes that as part of the investigation, she contacted Dr. Doherty, who repeated what the victim had told him about the incident with the defendant. The victim had told him that she had sat on the defendant's knees while they had been looking at pornography from computer discs. She stated that she had become "nervous and uncomfortable," and then the defendant had put his right hand under her underwear and had begun to fondle her vagina, but there had been no penetration. She said she had felt

---

[3]There is some confusion whether the victim spoke directly to Murdock, or whether the mother simply relayed the victim's story to Murdock. Although the affidavit states that the victim spoke directly to Murdock on this point, it also states that the mother refused to allow DSS to contact the victim directly. We need not speculate, because even if we assume that the victim only told her mother, who then relayed the information, we still conclude that there was probable cause for the warrant.

"uncomfortable and weird," so she had gone to another room, where the defendant later had told her not to tell anyone what had just happened. The victim said she had told her sister about the pornographic website and several days later the sisters again had gone to their grandfather's house and had been able to access it. The victim's sister had written down the website on a piece of paper. This paper had fallen out of the coat pocket of the victim's sister and had been found by the victim's father. Finally, Trooper Hayes asked Senges if she had spoken with the victim or the mother directly, to which Senges replied that DSS had been denied access to the children.

The rest of the affidavit concerned the manner in which computers store data and the reasons why there was probable cause to believe that relevant evidence was still present on the defendant's computer. The search warrant sought computer components, data files, and other specified information constituting evidence of a violation of G. L. c. 272, § 28, all located at the defendant's Dedham residence. The search warrant was granted, and was executed at the residence on April 11, 2003. The evidence collected under the warrant led to the charges filed against the defendant.

*Discussion.* The question is whether the totem pole hearsay evidence[4] relied on by Trooper Hayes is sufficient to support probable cause for the warrant. To establish probable cause, "[a]n affidavit must contain enough information for an issuing magistrate to determine that the items sought are related to the criminal activity under investigation, and that they reasonably may be expected to be located in the place to be searched at the time the search warrant issues." *Commonwealth* v. *Donahue*, 430 Mass. 710, 711-712 (2000), quoting from *Commonwealth* v. *Cinelli*, 389 Mass. 197, 213, cert. denied, 464 Mass. U.S. 860 (1983). Enough of the underlying circumstances must be recited for the magistrate to perform her detached function and not be simply a rubber stamp for law enforcement. See *Commonwealth* v. *James*, 424 Mass. 770, 777 (1997). Yet, the affidavit should be interpreted as a whole, in a commonsense, rather than hypertechnical, manner. See *Commonwealth* v. *Atchue*, 393 Mass.

---

[4]See *Commonwealth* v. *Boyer*, 58 Mass. App. Ct. 662, 666 (2003) (totem pole hearsay is hearsay within hearsay).

343, 346 (1984). "[T]he resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *Ibid.*, quoting from *United States* v. *Ventresca*, 380 U.S. 102, 108-109 (1965).

When hearsay is relied upon to supply probable cause, under art. 14 of the Massachusetts Declaration of Rights, we employ the *Aguilar-Spinelli*[5] standard to test its reliability. See *Commonwealth* v. *Upton*, 394 Mass. 363, 374-375 (1985); *Commonwealth* v. *Peterson*, 61 Mass. App. Ct. 632, 634 (2004). This standard requires that an affidavit contain information about (1) some of the underlying circumstances from which the informant concluded that the contraband was where it is said to be (the basis of knowledge prong), and (2) some of the underlying circumstances from which the affiant concluded that the informant was 'credible' or her information 'reliable' (the veracity prong). *Commonwealth* v. *Upton*, *supra*.[6] The defendant bears the burden of showing that the evidence seized pursuant to a warrant was illegally obtained. See *Commonwealth* v. *Taylor*, 383 Mass. 272, 280 (1981).

As we have noted, the thrust of the defendant's argument for suppression is that Trooper Hayes relied solely on chains of

---

[5]See *Aguilar* v. *Texas*, 378 U.S. 108, 114 (1964); *Spinelli* v. *United States*, 393 U.S. 410, 415 (1969).

[6]As one commentary has observed:

"Each prong looks at information from a particular perspective. . . . The basis of knowledge prong looks at the information to determine, *from the perspective of the informant* or the supplier of the information, whether particular evidence of criminal activity might be found at a particular location. In other words, the basis of knowledge examines how the informant or provider of information concluded that the particular evidence of criminal activity was at the location [she] identified. On the other hand, the veracity prong looks at why the *affiant* concluded, and hence the magistrate can conclude, that the provider of the information was reliable, thus establishing that the information provided (to the effect that evidence of criminal activity is to be found at the particular location) is credible or worthy of belief. In other words, the veracity test is a two-part inquiry. It examines why the affiant concluded, and the magistrate should conclude, not only that the provider of the information was reliable but also that the information provided is credible or worthy of belief."

Grasso & McEvoy, Suppression Matters Under Massachusetts Law § 10-3, at 10-4 (2001 & 2004 eds.).

hearsay, and never spoke directly with the victim or her mother. To begin, we review the two chains of hearsay. In the first chain, the victim relayed her personal observations to her mother, who made a few observations of her own. The mother then reported the information to DSS intake screener Murdock, who documented the information and transmitted it to the affiant. In the second chain, the victim relayed her personal observations to Dr. Doherty, the family therapist, who repeated them to DSS investigator Senges, who documented them and provided them to the affiant. The facts of the alleged assault reported through each chain were essentially the same.

Turning to the first prong of the *Aguilar-Spinelli* standard, the defendant argues that the affidavit rests on an insufficient basis of knowledge because all the persons the affiant relied upon predicated their knowledge of the alleged assault upon the victim's account. It is well established that hearsay, standing alone, can satisfy the basis of knowledge prong, if reliable. See, e.g., *Commonwealth* v. *Grzembski*, 393 Mass. 516, 521 (1984); *Commonwealth* v. *Harding*, 27 Mass. App. Ct. 430, 435-436 (1989); *Commonwealth* v. *Peterson*, 61 Mass. App. Ct. at 635. When dealing with a chain of hearsay, however, each link must be tested and found reliable under *Aguilar-Spinelli*. See *Peterson*, *supra*. See generally Smith, Criminal Practice and Procedure § 208 (2d ed. 1983 & Supp. 2005).

In this case, the first link in the chain, the victim, presumptively meets the basis of knowledge test because her information was based upon personal observation. See, e.g., *Commonwealth* v. *Allen*, 406 Mass. 575, 578 (1990). The other informants in both chains all based their knowledge on the victim's statements. This is sufficient to satisfy the basis of knowledge inquiry because the other informants were relying on the specific statements of a person, known to the police, who claimed she was the victim of a serious crime, something patently "more than a casual rumor or an individual's general reputation." See *Commonwealth* v. *Robinson*, 403 Mass. 163, 165 (1988). Contrast *Commonwealth* v. *Honneus*, 390 Mass. 136, 141-142 (1983) (insufficient basis where no way to tell how initial source learned hearsay information); *Commonwealth* v. *Reddington*, 395 Mass. 315, 322 (1985) (no basis of knowledge where informant "had been told" by

unknown source); *Commonwealth* v. *Allen*, 406 Mass. at 578 (no way to test reliability where informants based statements on "casual rumor" or "reputation"). Indeed, if this were not sufficient, as the defendant claims, hearsay statements never would meet this prong of the test because the basis of knowledge of any hearsay statement is the speaker of the original statement. See LaFave, Search and Seizure § 3.3(d), at 163-164 (4th ed. 2004), and cases cited. In sum, because the victim's observations satisfy the basis of knowledge prong, the repetition of this information does so as well.

Turning to the veracity prong, the defendant acknowledges that information provided by named, unpaid informants generally is accorded more weight. See *Commonwealth* v. *Grzembski*, 393 Mass. at 522. Nevertheless, he contends that the mere fact that an informant is named does not automatically make her information reliable; it is simply one factor. See *Commonwealth* v. *Atchue*, 393 Mass. at 347. The defendant claims that there are no other indicia of veracity for any of the informants named in the affidavit. Moreover, he argues that the mother undercut her credibility by restricting access to the victim. The defendant also argues that the fact that the victim is named should not add to her credibility because she never voluntarily submitted her name to the police, and even her mother only spoke with DSS. Finally, the defendant faults the police investigation for not attempting to corroborate any of the victim's allegations.

The defendant's argument is unpersuasive. Several factors establish the veracity of the victim and her mother. First, the victim was more than a named informant — she was the victim of the alleged crime. A victim of a crime presumptively satisfies the veracity prong. *Commonwealth* v. *Carey*, 407 Mass. 528, 534 n.4 (1990). "A serious charge . . . when volunteered by an identified party . . . carries with it indicia of reliability," *Commonwealth* v. *Atchue*, *supra*, quoting from *United States* v. *Wilson*, 479 F.2d 936, 940 (7th Cir. 1973), because the identified person is not a "faceless informer" whose inarticulated self-interest would render the information automatically suspect, *Commonwealth* v. *Atchue*, *supra*. This presumption is not defeated simply because the victim, an eight year old girl, did not report the crime directly to police. See *Commonwealth* v.

*Cruz*, 373 Mass. 676, 684 (1977) (probable cause to arrest where two arson victims identified defendant to a firefighter, who informed police, who arrested defendant). The victim informed her most important authority figures: her parents. Her mother then reported the incident to DSS, commencing an investigation. This was sufficient to dispel suspicions of any potential inarticulated self-interest. Moreover, the victim's veracity was only strengthened by the detail of her statements regarding the circumstances of the abuse and indicating a firsthand knowledge of the things to be seized, i.e., the computer, its components, and the pornography within or near it.

Next, considering the mother, she too manifested other indicia of reliability to go along with the fact that she voluntarily named herself to authorities and instigated an investigation into her own family. As the mother of the victim, she presumably had a strong desire to see the person who allegedly molested her child brought to justice, which gave her statement "an ostensible patina of credibility." See *Commonwealth* v. *Aarhus*, 387 Mass. 735, 744 (1982). See also Grasso & McEvoy, Suppression Matters Under Massachusetts Law § 10-5(a)(1), at 10-9 (2001 & 2004 eds.) ("a victim of a crime or close relatives of a victim are presumed to be reliable not only by virtue of their being named, but also by their desire to bring the crime to the attention of the authorities and to see that justice is done"). Furthermore, the veracity of the statements of both the victim and her mother is bolstered by the fact that the details related through their hearsay chain were corroborated by the other hearsay chain. The facts reported to Murdock by the mother were virtually identical to those Dr. Doherty reported to Senges.[7] Admittedly this corroboration, based as it is upon another hearsay chain, is not as strong as the corroboration of

---

[7] Dr. Doherty's own credibility is supported by (1) the fact that he is named and identifiable to police; (2) his position as a disinterested professional who could be punished for providing false information, see G. L. c. 119, § 51A; and (3) the provisions of § 51A, which require cooperation with law enforcement when there is reason to believe a child has been abused.

The victim's veracity was buttressed further by the statement of her sister, as reported by her mother to Murdock, and as reported by the victim to Dr. Doherty, regarding the name of the pornographic Internet website that had been written on the piece of paper that had fallen from the victim's sister's pocket.

the totem pole hearsay in cases like *Grzembski* and *Peterson*, where police verified specific facts. The corroborating information, however, interlocked in a fashion that provides some additional weight to the mother's veracity. See, e.g., *Commonwealth* v. *Russell*, 46 Mass. App. Ct. 513, 517 (1999) (five confidential informants, no one of whom satisfied both prongs, provided police with mutually corroborative information); *Commonwealth* v. *Ilges*, 64 Mass. App. Ct. 503, 511 (2005) (statements of two informants overlapped on unusual facts and reflected various matching details). Combining these factors, the mother's statements, like the victim's, satisfy the veracity prong.

As a final matter, we note that police officers and other government officials involved in an investigation are presumed to be reliable and their information credible. See *United States* v. *Ventresca*, 380 U.S. at 111; Grasso & McEvoy, *supra* at § 10-5(a)(1). See also *Commonwealth* v. *Cruz*, 373 Mass. at 684. Consistent with that principle, the professions of the intermediary parties here, DSS intake screener and DSS investigator, acting pursuant to their public safety mission, provide further credibility as to their statements. See G. L. c. 18B, § 2(2) (DSS shall provide protective services for children); G. L. c. 119, § 51B(4) (DSS shall notify local district attorney in cases where child has been sexually assaulted).

*Conclusion.* Notwithstanding totem pole hearsay, the affidavit adequately demonstrated probable cause to believe that items related to the crime would be found at the defendant's residence. Consequently, we reverse the order of the District Court suppressing the evidence seized pursuant to the warrant. A new order shall enter denying the motion.

*So ordered.*