NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-390

COMMONWEALTH

vs.

STEVEN RIOS.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

On October 24, 2020, officers of the Lawrence Police Department responded to the defendant's report of a break-in and theft at his home. Based on information they learned during their investigation of the break-in, the police sought and obtained a warrant to search the defendant's apartment for marijuana and evidence of marijuana distribution. As a result of the search conducted when the police executed the warrant, the defendant was charged in the District Court with distribution of marijuana and a series of offenses related to the alleged mistreatment of dogs.

The defendant successfully moved to suppress the evidence seized during the search and the Commonwealth appeals from the judge's ruling.[1]  We reverse.

Background.  Our review is de novo, see Commonwealth v. Long, 454 Mass. 542, 555 (2009), S.C., 476 Mass. 526 (2017), and confined to "the four corners of the affidavit."  Commonwealth v. Henley, 488 Mass. 95, 114 (2021).  In deciding whether "[t]he facts contained in the affidavit, and the reasonable inferences therefrom, . . . 'demonstrate probable cause to believe that evidence of the crime will be found in the place to be searched,'" Commonwealth v. Lowery, 487 Mass. 851, 856 (2021), quoting Commonwealth v. Tapia, 463 Mass. 721, 725 (2012), we consider the search warrant affidavit "as a whole and in a commonsense and realistic fashion."  Commonwealth v. Snow, 486 Mass. 582, 586 (2021), quoting Commonwealth v. Dorelas, 473 Mass. 496, 501 (2016).

On November 3, 2020, a search warrant was issued for the defendant's apartment based on the strength of an affidavit signed by Detective Alexander Ovalles.  We summarize the affidavit here.  Ovalles was a detective in the gang unit and had training and experience in identifying and investigating

---

[1] A single justice of the Supreme Judicial Court allowed the Commonwealth's application, pursuant to Mass. R. Crim. P. 15 (a)(2), as amended, 476 Mass. 1501 (2017), for leave to pursue an interlocutory appeal in the Appeals Court.

2

drug crimes.  Shortly after midnight on October 24, 2020, Ovalles and other Lawrence police officers responded to the defendant's report of a break-in at his apartment.  Beginning that night and over the next several days, the police spoke with the defendant and the defendant's girlfriend (who also lived in the apartment) regarding the break-in.  In addition, the police obtained surveillance video recordings of the exterior of the defendant's apartment from the defendant's landlord, who also lived in the building.  In the affidavit, Ovalles recounted the girlfriend's statements to the police that were made during an investigatory interview.  Specifically, the girlfriend told police that she and the defendant had an acquaintance who frequently came to the apartment and smoked marijuana with them.  She stated that on October 23, 2020, the day of the break-in, the defendant purchased "weed" from the acquaintance,[2] and that shortly thereafter, the acquaintance and the defendant argued about the defendant being "short on money they had agreed for the . . . [drug] transactions."  Later that day, the defendant and his girlfriend left the apartment for a few hours.  When they returned, they found that the apartment had been "ransacked[]."

---

[2] As we discuss, infra, this statement by the girlfriend was the result of an agreed-upon redaction.  We consider the affidavit as redacted.

3

The defendant reported the crime to the police shortly after midnight on October 24, 2020; he gave the police investigators access to his apartment when they arrived. The defendant initially told the police the only things missing from the apartment were two puppies[3]; before the police left the apartment, the defendant added that he was also missing $5,000 in cash that he had kept in a drawer in his bedroom. Surveillance video of the apartment from October 24, 2020, showed that the defendant was underreporting the theft -- the video showed four men entering the defendant's apartment through a window, then leaving minutes later wearing "full" backpacks and carrying four boxes, a suitcase, and a "[ten]-gallon trash container full of stolen materials." Additionally, the video showed one of the intruders entering with a long object concealed under a blanket and leaving with what appeared to be a rifle in his hands.[4]

The defendant's girlfriend watched the surveillance video and identified one of the intruders as the acquaintance who had argued with the defendant earlier that day. She also told the

---

[3] As we note, infra, the defendant's girlfriend mentioned only one stolen "dog"; the difference is not significant to our analysis.

[4] The police located a live round of rifle ammunition on top of the defendant's couch. The defendant denied that the round was his.

4

police the items stolen during the break-in included not only a dog and the cash described by the defendant, but also "weed."[5]

Four days after the break-in, the police returned to the defendant's apartment. The defendant opened the door and, upon seeing the police, immediately closed it again. Even with the apartment door closed, the police smelled "an extremely strong odor of unburnt marijuana" emanating from inside the apartment.

The defendant's resident landlord provided the surveillance video described above. In addition, in his affidavit, Ovalles documented the landlord's repeated calls to the Street Narcotics Enforcement Unit and the Drug Hotline in the two weeks preceding the break-in. The affidavit recounted "a substantial amount of calls" in which the landlord had complained repeatedly to the police about "heavy" foot traffic to and from the defendant's apartment. The landlord reported that individuals would arrive at the apartment and then leave "within minutes," sometimes carrying bags they had not had when they arrived. The landlord "indicated this [was] a nonstop issue at the household." Ovalles averred that, based on his experience and training, a drug dealer selling drugs from their home experiences "significant . . . foot traffic" to and from the residence. Ovalles averred that the day before he signed the affidavit in

---

[5] And "clothing."

5

support of the search warrant, the landlord had contacted the police "Drug Hotline . . . multiple times, again advising that there were multiple vehicles parked outside his residence, [and that the occupants of the vehicles] entered [the defendant's] apartment and left within minutes."  The landlord reported that he was "certain [the defendant] [wa]s distributing marijuana on a daily basis."

According to the affidavit, the defendant belonged to a gang known to be involved in criminal activity, including narcotics distribution.  He also had a prior conviction for possession with intent to distribute marijuana.[6]

Discussion.  1.  The affidavit's reliability.  The defendant's challenge to the reliability of information provided by the defendant's girlfriend and the defendant's landlord is not persuasive.  "When hearsay is relied upon to supply probable cause, under art. 14 of the Massachusetts Declaration of Rights, we employ the Aguilar-Spinelli standard to test its reliability."  Commonwealth v. Zorn, 66 Mass. App. Ct. 228, 232 (2006), citing Spinelli v. United States, 393 U.S. 410, 415 (1969); Aguilar v. Texas, 378 U.S. 108, 114 (1964).  This standard requires that an affidavit contain information about the informant's (1) basis of knowledge, and (2) veracity or

_____

[6] The affidavit included a 2015 docket number associated with that conviction, but no other details about the case.

reliability. See Zorn, supra. Here, the basis of knowledge prong is satisfied for both the girlfriend and the landlord because the statements included in the affidavit are based on their own first-hand observations (or reasonable inferences drawn from those observations). See id. at 233. The veracity prong is also satisfied because both the girlfriend and the landlord were known by name and address to the police. See Commonwealth v. Bakoian, 412 Mass. 295, 301 (1992), quoting Commonwealth v. Atchue, 393 Mass. 343, 347 (1984) ("The identification of [an] informant to the police strengthen[s] his or her credibility and 'carrie[s] with it indicia of reliability of the informant'").

The defendant's attempt to resurrect a Franks challenge, see Franks v. Delaware, 438 U.S. 154, 171 (1978) (describing procedure for challenging search warrant based on "deliberate falsity or reckless disregard [for the truth]"), to Ovalles's affidavit as part of this appeal is unavailing. The defendant first raised the issue through a motion for a Franks hearing in the trial court. At the preliminary hearing on the Franks motion, the defendant argued that Ovalles's affidavit misrepresented the police interview with the defendant's girlfriend. The affidavit stated that she told police that the defendant and the acquaintance had argued about buying "[two] pounds of marijuana," but the defendant contended that a

7

recording of the interview established that the girlfriend told the police that the defendant bought "weed" from the acquaintance and made no reference to the quantity that the defendant bought. However, the defendant withdrew the Franks motion in open court on the preliminary hearing date in exchange for the prosecutor's agreement to excise the words "[two] pounds of marijuana" from Ovalles's affidavit and to replace them with the word "weed."[7] The preliminary hearing did not go forward; consequently, counter to the representations in the defendant's brief, there was no determination that Ovalles "lied in his search warrant."[8] We do not consider the argument further. Cf. Commonwealth v. Bettencourt, 447 Mass. 631, 633 (2006).

---

[7] As presented to the clerk-magistrate, Ovalles's affidavit included the following sentence as part of his account of the girlfriend's interview with the police: "Detectives were informed that [the defendant] had purchased (2) pounds of marijuana from [the acquaintance], but [the acquaintance] had indicated [the defendant] was short on money they had agreed for the arranged narcotics transactions." On the hearing date, however, defense counsel "agreed to forgo [the] . . . preliminary hearing" required under Franks in exchange for the prosecutor's agreement to substitute the word "weed" for the words, "(2) pounds of marijuana."

[8] There is thus no proper basis for appellate counsel's repeated statements to that effect in the defendant's appellate brief. Likewise, appellate counsel's representation that "[t]he Commonwealth conceded (at a [Franks] hearing) that Ovalles deliberately lied in his search warrant affidavit and agreed to purge the untruth from the affidavit" is not supported by the record. We also need not address the argument that Ovalles should be charged with perjury.

8

2.  Probable cause.  Accepting the information in the affidavit as reliable, and conducting our probable cause analysis focused on "the factual and practical considerations of everyday life on which reasonable and prudent [people], not legal technicians, act," Commonwealth v. Hason, 387 Mass. 169, 174 (1982), quoting Brinegar v. United States, 338 U.S. 160, 175 (1949), we readily discern probable cause to search the defendant's apartment for marijuana and evidence of marijuana distribution.

We are satisfied that the affidavit established probable cause to believe that the defendant possessed more than the ten ounces of marijuana permitted under G. L. c. 94G, § 7 (a) (2).[9] From the defendant's girlfriend's account of the defendant's relationship with the acquaintance and the circumstances of the October 23, 2020, break-in, it is evident that the defendant bought marijuana from the acquaintance on October 23, 2020, and on prior occasions.  While it is possible, as the defendant argues, that the defendant's purchases were exclusively for personal use and that he possessed only the amounts permitted by G. L. c. 94G, § 7 (a) (2), that is not the inference we think reasonable in this case.  See Snow, 486 Mass. at 586 (2021),

---

[9] We assume without deciding that the defendant was at least twenty-one years old at the times relevant here.  See G. L. c. 94G, § 7 (a).

9

citing Dorelas, 473 Mass. at 501.  The girlfriend told the police that the acquaintance and the defendant argued on the afternoon of the break-in over the defendant's failure to pay in full for the marijuana the acquaintance sold to him, and she identified the acquaintance as one of the men caught on surveillance video robbing the apartment later that night.  We think it reasonable to conclude that the acquaintance intruded into the defendant's home to recover the overdue payment, the marijuana for which payment was due, or both.  Even taken alone, the acquaintance's willingness to take the risks associated with breaking and entering into someone's home, see, e.g., G. L. c. 266, § 16 (penalty for breaking and entering at night up to twenty-years imprisonment), indicates that the value of the marijuana at issue was high.  We also consider, however, the rifle-carrying intruders' leaving ammunition behind where the defendant would be likely to find it as an implied threat of future violence, which suggests that the money owed was not trivial.

We draw an additional set of inferences from Ovalles's description of the defendant's behavior at and around the time of the break-in.  For example, the defendant did not report, as the girlfriend did, that the stolen property included "weed." He likewise failed to mention that the stolen property was enough to fill the backpacks, boxes, and other containers

10

carried out by the four intruders, suggesting that he did not want the police to know what property the intruders removed from his apartment. We infer from these omissions that the defendant was trying to conceal his marijuana possession from the police. We consider this as evidence of the defendant's consciousness of guilt. See Commonwealth v. Donovan, 58 Mass. App. Ct. 631, 640 (2003) (reasonable to infer consciousness of guilt from "defendant's statements to the police, and the omissions therefrom"). We also think it is reasonable to infer that the defendant attempted to minimize the officers' ability to smell the strong odor of unburned marijuana coming from his apartment when the police were there four days after the break-in, which bolsters our conclusion that the amount of marijuana in the defendant's possession was more than the law allowed.[10] Together, Ovalles's averments permit a reasonable inference -- and one that we draw -- that the defendant possessed more marijuana than the amount permitted under G. L. c. 94G, § 7 (a).

As to distribution, the landlord's account of the heavy foot traffic to and from the defendant's apartment, viewed through the lens of Ovalles's training and experience, was consistent with distribution of drugs from that apartment. Cf.

---

[10] We do not suggest that the odor itself or the strength of that odor provided probable cause to believe that the defendant possessed a criminal amount of marijuana. See Commonwealth v. Overmyer, 469 Mass. 16, 22 (2014).

11

Commonwealth v. Hill, 51 Mass. App. Ct. 598, 607 (2001) ("minimal foot traffic" insufficient to establish existence of drug distribution from given location). The same is true of the defendant's possession of a large amount of cash in his bedroom drawer. See Pena v. Commonwealth, 426 Mass. 1015, 1017 (1998) (petitioner's arrest "with a large amount of cash on his person" evidence of defendant's "direct participation in . . . drug distribution"). Considered along with the information we have already discussed suggesting that the defendant possessed more than the amount of marijuana permitted for personal use under G. L. c. 94G, § 7 (a), we are satisfied that the affidavit established probable cause to believe that the defendant was engaged in distributing marijuana.[11]

Finally, even if we were to conclude that the affidavit failed to establish probable cause that the defendant possessed more than ten ounces of marijuana at any time relevant to our analysis, Ovalles's affidavit established probable cause to

---

[11] Based on the lack of any detail about the defendant's prior conviction for marijuana distribution, we give the fact of that conviction no weight. Cf. Commonwealth v. Allen, 406 Mass. 575, 579 (1990), quoting Commonwealth v. Germain, 396 Mass. 413, 418 n.7 (1985) (defendant's criminal history relevant to probable cause determination "only if the history is sufficiently recent and similar to the crime charged to demonstrate that 'the defendant was not averse' to committing such a crime"). We likewise do not consider the defendant's gang membership in our calculus as the affidavit did not provide any detail of a nexus between the gang and the defendant's drug distribution.

believe that the defendant was distributing marijuana from his apartment.  Whatever the defendant's ability to possess marijuana legally, he was not permitted to sell it, see G. L. c. 94C, § 32C, and we see no reasonable argument that the defendant was giving the marijuana away for free.  Accordingly, the affidavit was sufficient to defeat the motion to suppress.

<u>Order allowing motion to
   suppress reversed</u>.

By the Court (Meade, Neyman &
   Hand, JJ.[12]),

Assistant Clerk

Entered:  May 10, 2024.

---

[12] The panelists are listed in order of seniority.