## COMMONWEALTH vs. JUSTIN L. YOUNG.

No. 09-P-1721.

Suffolk. October 6, 2010. - January 6, 2011.

Present: CYPHER, GRASSO, & MILLS, JJ.

*Search and Seizure,* Motor vehicle, Arrest, Threshold police inquiry, Plain view, Probable cause, Reasonable suspicion, Protective frisk. *Constitutional Law,* Search and seizure, Probable cause. *Probable Cause. Threshold Police Inquiry. Arrest. Controlled Substances. Firearms.*

A Superior Court judge properly denied a criminal defendant's motion to suppress evidence discovered by a police officer during a patfrisk that was conducted when, following the arrest of the driver of an automobile in which the defendant had been a passenger, the defendant was ordered to get out of the vehicle, and stated to the officer that he had a firearm, where the initial stop of the vehicle by police was lawful, given that the police had observed a civil motor vehicle infraction, i.e., screeching tires [551-552]; where the police acted reasonably in ordering the defendant out of the car so that they could conduct a justifiable search incident to the driver's arrest, given that the presence of the defendant and another passenger in the vehicle rendered them able to destroy or conceal evidence inside the passenger compartment relevant to the crime for which the driver was arrested as effectively as the driver himself could have had he not been restrained in a nearby cruiser [552-555]; and where the defendant's actions after being ordered out of the vehicle gave rise to a reasonable apprehension of danger to the officers that justified the patfrisk [555-556].

COMPLAINT received and sworn to in the Central Division of the Boston Municipal Court Department on June 3, 2008.

A pretrial motion to suppress evidence was heard by *Annette Forde,* J., and the case was heard by *Mark Hart Summerville,* J.

*Daniel N. Marx* for the defendant.

*Stephen Coppola,* of North Carolina (*Zachary Hillman,* Assistant District Attorney, with him) for the Commonwealth.

GRASSO, J. A judge sitting without a jury found the defendant guilty of carrying a firearm without a license, possession of ammunition without a firearm identification card, and unlawful

possession of a loaded firearm. On appeal, the defendant contends that the motion judge erred in denying his motion to suppress evidence and statements obtained during a patfrisk undertaken as a result of his response to an order to exit a motor vehicle that the police sought to search incident to the arrest of the vehicle's driver. We affirm the defendant's convictions.

1. *Factual background.* We recount the motion judge's factual findings, supplemented with uncontested testimony from the suppression hearing. See *Commonwealth v. Isaiah I.*, 448 Mass. 334, 337 (2007); *Commonwealth v. Colon*, 449 Mass. 207, 214 (2007). At 10:00 P.M. on May 24, 2008, Boston police Officers David Santosuosso and Brian Johnson responded to a dispatch to investigate a "shot spotter activation"[1] at 65 Winthrop Street in the Dorchester section of Boston, an area known for shootings, firearms violations, and illegal drug activity. The officers arrived within minutes of the dispatch and searched for physical evidence that shots had been fired, but they found nothing.

Upon returning to their patrol duties, at about 10:25 P.M., the officers heard a screeching of tires and saw a blue Cadillac automobile traveling fast on Winthrop Street. The officers signaled the Cadillac to stop, and it stopped promptly. Santosuosso approached the driver's side and, through the open window, observed the driver, later identified as James Dobson, looking towards the vehicle's two other occupants. Santosuosso also noticed a glassine baggie protruding from Dobson's left breast pocket. From his training and experience, Santosuosso recognized the baggie as the kind used to hold illegal controlled substances, and upon further examination, he noted that the baggie contained four pills. Two were orange with "Superman" logos, and two were off-white with unidentified stamps. Santosuosso immediately recognized the orange tablets as Ecstasy, a class B controlled substance. Dobson claimed that he had just taken the drugs from his younger brother at 65 Winthrop Street. Upset at discovering the drugs, he became angry and screeched the vehicle's tires as he left the area.

Santosuosso arrested Dobson. After pat frisking Dobson for

---

[1] A "shot spotter" purports to detect the sound of gunshots. Upon activation, the shot spotter transmits a notification to dispatch officers to the area from which shots are detected. The reliability of the shot spotter technology has no bearing on resolution of the issue in this case.

weapons, handcuffing him, and placing him into the rear of the police cruiser, Santosuosso and Johnson returned to the Cadillac where the defendant remained in the front passenger seat and a female remained in the rear. Santosuosso ordered the defendant out of the car. Upon hearing the exit order, the defendant reacted by tensing up his shoulders, which "came up high." Santosuosso again ordered the defendant from the vehicle. The defendant began to exit but hesitated. His body was half in and half out of the car, his hands remained inside the vehicle, his back was to the officer, and he would not turn around. Santosuosso ordered him to show his hands and move away from the vehicle. When the defendant ultimately stepped completely from the vehicle and stood facing the hood of the car, Santosuosso moved him towards the back of the car and began a patfrisk. Unprompted, the defendant told Santosuosso, "I have a gun in my waistband. . . . [M]y summer's gone." Santosuosso retrieved the gun from the right side of the defendant's waistband.

2. *Discussion.* In his motion to suppress, the defendant argued that the police lacked a basis to order him from the vehicle because the discovery of drugs on Dobson's person did not justify a search of the passengers or of the vehicle itself for drugs.[2] The Commonwealth countered that the police could properly order the defendant to exit the vehicle in conjunction with a search of the vehicle incident to Dobson's arrest and that the defendant's subsequent behavior justified the patfrisk leading to discovery of the gun.[3]

In ruling, the judge reasoned that the exit order was permis-

---

[2]The defendant also argued that the shot spotter activation did not create a reasonable apprehension of danger justifying an exit order.

[3]The Commonwealth also argued, and the judge agreed, that the motor vehicle exception also justified a search of the vehicle. See *Pennsylvania* v. *Labron*, 518 U.S. 938, 940 (1996) (under Fourth Amendment to United States Constitution warrantless search of motor vehicle permissible upon probable cause and without need for exigency); *Commonwealth* v. *Motta*, 424 Mass. 117, 124 (1997) (when automobile stopped in public place with probable cause, warrantless search permissible under art. 14 without exigent circumstances). See also *Commonwealth* v. *Villatoro*, 76 Mass. App. Ct. 645, 647-648 (2010). Because we conclude that a search of the vehicle incident to Dobson's arrest was proper to prevent the destruction of evidence, we need not resolve whether a search would also be permissible based on a reasonable belief that evidence of the crime of arrest would be found inside the vehicle or as a motor vehicle search based on probable cause. See notes 7-8, *infra.*

sible because a vehicle search incident to Dobson's arrest was proper when the defendant and a female passenger remained inside the vehicle. Because the defendant's behavior *subsequent* to the exit order raised a reasonable apprehension of danger, the police were justified in conducting the patfrisk of the defendant's person that led to discovery of the gun.

On appeal, the defendant maintains that the exit order leading to the frisk of his person and discovery of the gun was unlawful because (1) there was no basis for stopping the vehicle initially and (2) the justification for the exit order, a search of the vehicle's interior incident to Dobson's arrest, was impermissible under both the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights. See *Arizona* v. *Gant*, 129 S. Ct. 1710, 1714 (2009); *Commonwealth* v. *Santiago*, 410 Mass. 737, 743 (1991). We disagree.

A. *The vehicle stop and arrest of Dobson*. While the defendant's status as a passenger permits him to challenge the initial stop of the vehicle, the propriety of that stop requires little discussion. See *Brendlin* v. *California*, 551 U.S. 249, 251 (2007) (defendant passenger may challenge stop of motor vehicle); *Arizona* v. *Johnson*, 129 S. Ct. 781, 787 (2009). The stop was lawful because the police observed a civil motor vehicle infraction, the screeching of tires. See G. L. c. 90, § 16, as appearing in St. 1971, c. 1032 (prohibiting the operation of a motor vehicle "so as to make a harsh, objectionable or unreasonable noise"). See also *Commonwealth* v. *Santana*, 420 Mass. 205, 209 (1995) (reasonable belief that civil motor vehicle infraction has occurred provides lawful basis for stop); *Commonwealth* v. *Ciaramitaro*, 51 Mass. App. Ct. 638, 642-643 (2001).

Had more not developed, there would have been no basis to order either Dobson, the driver, or the defendant, a passenger, from the vehicle. See *Commonwealth* v. *Gonsalves*, 429 Mass. 658, 662-663 (1999) (under art. 14 police officer engaged in routine traffic stop must have reasonable belief that officer's safety or safety of others is in danger before ordering driver or passenger from vehicle). Compare *Pennsylvania* v. *Mimms*, 434 U.S. 106, 111 & n.6 (1977) (under Fourth Amendment police officer may, as matter of course, order driver out of vehicle lawfully stopped for traffic violation), and *Maryland* v. *Wilson*,

519 U.S. 408, 415 (1997) (under Fourth Amendment exit order to passenger permissible in routine traffic stop). However, what began as a routine stop for a civil motor vehicle infraction quickly developed into a nonroutine encounter when Santosuosso made a plain view observation of a glassine baggie protruding from Dobson's pocket. See *Commonwealth* v. *Ciaramitaro, supra* at 642. The discovery of drugs on Dobson's person changed the nature of the encounter and provided probable cause to arrest Dobson for a narcotics violation. See G. L. c. 94C, § 31.[4]

B. *The exit order to the defendant.* The motion judge found that nothing the defendant or the female passenger did prior to the initial exit order raised a reasonable apprehension of danger. It was what followed the exit order that gave rise to safety concerns and, therefore, justified a frisk of the defendant for weapons. We agree with this aspect of the judge's analysis. The propriety of the exit order to the defendant, and the subsequent patfrisk of his person, depends entirely on the ability of the police to conduct a vehicle search incident to Dobson's arrest.

To the extent that the police could lawfully conduct a vehicle search incident to Dobson's arrest, they were not required to do so with passengers inside the vehicle. See *Commonwealth* v. *Correia,* 66 Mass. App. Ct. 174, 177-179 (2006) (search of vehicle for narcotics could reasonably include issuing exit order to passenger to facilitate search of the vehicle). Conversely, to the extent that the police lacked lawful grounds to conduct a vehicle search incident to Dobson's arrest, their order to the defendant to exit the vehicle amounted to a prolonging of the stop and seizure of the defendant's person that the defendant may challenge under art. 14. See *Brendlin* v. *California, supra.* See also *Commonwealth* v. *Washington,* 449 Mass. 476, 479 n.3 (2007) (passengers in stopped motor vehicle not free to leave or to decline officer's request); *Commonwealth* v. *Quintos Q.,* 457 Mass. 107, 110 (2010). We focus then on whether the police could permissibly conduct a vehicle search incident to Dobson's arrest.

"The purpose, long established, of a search incident to an

---

[4]The defendant does not now argue that the police lacked probable cause to arrest Dobson, nor did he do so below. Rather, he maintains that the police lacked grounds to conduct a search of the vehicle incident to Dobson's arrest because Dobson was handcuffed and secured in the police cruiser. See *Arizona* v. *Gant, supra.*

arrest is to prevent an individual from destroying or concealing evidence of the crime for which the police have probable cause to arrest, or to prevent an individual from acquiring a weapon to resist arrest or to facilitate an escape. A search incident to arrest . . . generally is limited . . . to the body of the person arrested and the area and items within his . . . immediate possession and control at the time." *Commonwealth* v. *Santiago*, 410 Mass. 737, 743 (1991). Had Dobson been the sole occupant of the vehicle, we agree with the defendant that under the Fourth Amendment and art. 14 a vehicle search incident to Dobson's arrest would not be justified in order to prevent his accessing a weapon or destroying evidence. See *Arizona* v. *Gant, supra* at 1719 (under the Fourth Amendment, vehicle search incident to recent occupant's arrest only authorized under *Chimel*[5] rationale "when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search")[6]; *Commonwealth* v. *Santiago, supra* at 743-744 (search incident to arrest impermissible where vehicle well out of reach); *Commonwealth* v. *Cassidy*, 32 Mass. App. Ct. 160, 163 (1992) (search incident to arrest impermissible where defendant already arrested, handcuffed, and secured in cruiser). At the time the police ordered the defendant to exit the vehicle, there was no danger that Dobson, who was already restrained and handcuffed inside the police cruiser, could draw a weapon from the Cadillac or conceal or destroy any contraband that remained inside it.

Unlike Gant, who was alone in the vehicle, Dobson was accompanied by two traveling companions who remained in the vehicle. Also unlike Gant, who "was arrested for driving with a suspended license — an offense for which police could not expect to find evidence in the passenger compartment of Gant's car," *Arizona* v. *Gant, supra*, Dobson was arrested for a drug offense, an offense for which the police could reasonably expect to find such evidence in the passenger compartment. See *Commonwealth* v. *Washington*, 449 Mass. at 483 n.9 (widely accepted that the discovery of some controlled substances provides grounds to search for additional controlled substances in the vicinity); *Commonwealth* v. *Skea*, 18 Mass. App. Ct. 685, 690

[5]See *Chimel* v. *California*, 395 U.S. 752, 763 (1969).
[6]See note 7, *infra*.

n.8 (1984). The same concern regarding the hiding or destruction of evidence that authorizes a vehicle search incident to arrest when the arrestee is not secured also exists when others with whom the arrestee is traveling remain unsecured inside the vehicle. Police action literally has to be "now or never" to preserve evidence of the crime of arrest that remains inside the vehicle and in proximity to the vehicle's unsecured occupants. Compare *Arizona* v. *Gant, supra*; *Commonwealth* v. *Washington, supra* at 480-484 (imminent loss of evidence creates exigent circumstance justifying warrantless search of vehicle).

Regardless of whether the defendant or the female passenger was involved in the possession of contraband to the same extent as Dobson, their presence in the vehicle rendered them able to destroy or conceal evidence inside the passenger compartment relevant to the crime for which Dobson was arrested as effectively as Dobson himself could have were he not restrained in the nearby cruiser. Faced with such a Hobson's choice, the police need not decline to search the passenger compartment for evidence that might be unavailable later. See *Wyoming* v. *Houghton*, 526 U.S. 295, 303 (1999) (distinguishing search of belongings in motor vehicle, for which individualized suspicion not required, from body search of passenger, which requires individualized suspicion). Accordingly, objective circumstances existed that made it reasonable to issue an exit order to the defendant so that the police could conduct a vehicle search incident to Dobson's arrest.

Because we conclude that concerns regarding the destruction of evidence of the crime of Dobson's arrest continued to exist while the defendant and another passenger remained inside the vehicle, we need not resolve whether a vehicle search incident to Dobson's arrest might also be justified under the alternative rationale set forth in *Arizona* v. *Gant*, that the crime for which Dobson was arrested makes it "reasonable to believe" that evidence of the crime of arrest could be found inside the vehicle, see *id.* at 1719,[7] or whether such a search would also be permis-

---

[7]As the Supreme Court made explicit in *Gant*, under the Fourth Amendment a search incident to an arrest is permissible under two different rationales. A vehicle search incident to the arrest of a recent occupant is proper under the *Chimel* rationale provided the occupant is unsecured and within reach of the passenger compartment. See *Gant, supra* at 1719. Such a search may also be

sible under art. 14.[8] See *Commonwealth* v. *Madera*, 402 Mass.
156, 159-161 (1988) (warrantless search incident to arrest of a
bag held by defendant permissible because police had probable
cause to search the bag and, particularly, because "we are deal-
ing here with evidence of a crime for which the defendant
already had been arrested on probable cause and not with evi-
dence of an unrelated crime"); *Commonwealth* v. *Garden*, 451
Mass. 43, 50 (2008) (search of passenger compartment within
permissible scope of automobile exception "because any contra-
band hidden on the passengers' person easily could have been
transferred to a location in the passenger compartment when
they were ordered to get out").

C. *The patfrisk.* Although the police initially had no basis to
do more than order the defendant to exit the vehicle while they
performed a search of the vehicle's interior for evidence of the
crime of Dobson's arrest, the defendant's behavior in response
to the exit order changed the nature of the encounter. The defend-
ant's actions subsequent to the exit order gave rise to a reason-
able apprehension of danger to the officers that justified a frisk,
and the defendant properly does not argue otherwise. The stop
occurred at night, in a high crime area where a shot spotter
activation had occurred only a short time earlier.[9] After being
ordered to exit the vehicle, the defendant raised his shoulders,
showed signs of nervousness, required numerous exit orders,
failed to exit the vehicle completely, and hid his hands from the
officers. In these circumstances, the apprehension of danger was
real and justified a frisk of the defendant. See *Commonwealth*
v. *Narcisse*, 457 Mass. 1, 9-10 (2010) (patfrisk justified when

permissible under the rationale of *Thornton* v. *United States*, 541 U.S. 615, 632
(2004), "when it is reasonable to believe evidence relevant to the crime of
arrest might be found in the vehicle." *Gant, supra,* quoting from *Thornton, su-
pra* at 632 (Scalia, J., concurring in judgment). In such an instance, "the offense
of arrest will supply a basis for searching the passenger compartment of an
arrestee's vehicle and any containers therein." *Gant, supra.*

[8]Nor need we limn the differences between a search incident to arrest based
on "reason to believe" that evidence of the crime of arrest will be found
inside the vehicle and a search under the motor vehicle exception, which is
based on probable cause to believe that evidence of criminality, generally, will
be found inside the motor vehicle.

[9]Indeed, Dobson told the police that he had just left the very location
described in the shot spotter dispatch.

individual's conduct poses threat to officers and gives rise to reasonable belief that he is armed and dangerous).

*Judgments affirmed.*