SUPERIOR COURT 
 
 COMMONWEALTH vs. DAVID ELLIS

 
 Docket:
 2081CR00219
 
 
 Dates:
 September 21, 2022
 
 
 Present:
 David A. Deakin
 
 
 County:
 MIDDLESEX
 

 
 Keywords:
 MEMORANDUM OF DECISION AND ORDER ON DEFENDANT’S MOTION TO SUPPRESS
 
 

             The defendant, David Ellis, is charged by indictment with one count of carrying a firearm without a license in violation of G. L. c. 269, § 10(a), one count of possession of ammunition without a Firearms Identification Card in violation of G. L. c. 269, § 10(h)(1), one count of possessing a class B drug in violation of G. L. c. 94C, § 34, one count of trafficking heroin in violation of G. L. c. 94C, § 32E(c), and one count of possession of a class E drug in violation of G. L. c. 94C, § 34. Ellis has moved to suppress evidence police discovered in his automobile and on his person. He argues that the information on which police relied to stop him and search his car was both unreliable and stale. He further contends that, once the pat-frisk of him revealed nothing, police lacked any reasonable suspicion to search his car. The Commonwealth responds that, when the police officer stopped Ellis’s car, the officer had probable cause to arrest him and that the ensuing searches, therefore, were lawful. Because the information upon which police relied to stop Ellis was neither unreliable as a matter of law nor stale and police had probable cause to arrest him for assault when the officer stopped his car, Ellis’s Motion to Suppress (“Motion,” Paper No. 14) is DENIED.
 
                                                            -1-
 
BACKGROUND
            I find the following facts from the testimony of Officer Russell Carman and Sergeant Geoff Erikson – both of the Wakefield Police Department – at the July 13, 2022, hearing on the Motion to Suppress (“Motion,” Paper No. 14). At around 2:00 a.m. on January 28, 2020, Officer Carman was patrolling the Everly Apartments (“the apartments”) on Audubon Road in Wakefield. While patrolling, Carman drove into a multi-level parking garage at the apartments. As he drove through the garage, he noticed a black Lincoln Navigator (“Lincoln” or “Navigator”) stopped on the ramp between the first and second levels of the garage with its engine on and its headlights pointed towards a parked Audi A4. Carman entered the Lincoln’s license plate number into a database and continued driving through the garage. Shortly thereafter, the database search revealed that the Lincoln was registered to the defendant, Ellis. The search results also indicated that Ellis did not have a license to carry firearms (“LTC”) under G. L. c. 140, § 131. Carman turned around to drive back down the parking garage ramp, but, by the time he returned to where he had seen the two automobiles, both the Lincoln and the Audi A4 were gone.
            As Carman left the garage, he could see the two automobiles heading east on Audubon Road, away from the apartments and toward Lynnfield. Carman then noticed a man waving at him and pointing toward the two cars. Carman stopped to speak to the man, who identified himself as Pedro Colon. He told Carman that, earlier that night, the driver of the Lincoln had “mean mugged”[1] him and gestured with his middle finger toward Colon from his car in the parking garage. Colon also told Carman that, approximately one week earlier, the driver of the
 
--------------------------------------------
 
[1] From the testimony, I gather that “mean mugging” is a slang term referring to staring at someone aggressively.
 
                                                            -2-
 
Lincoln had pointed a handgun at Colon and told him that he would “fucking end” him after an argument between the two men escalated. Colon told Carman that the handgun was black and that he believed it was either a nine-millimeter or forty-caliber weapon. When Carman asked Colon if he was sure about what he had seen, Colon said that he was sure and that “you don’t forget something like that.” Colon also warned Carman to “be careful” because the Lincoln’s driver “carries a gun.” Carman’s conversation with Colon lasted approximately one minute, and Carman immediately drove east down Audubon Road toward the two cars.
            Carman caught up to the Lincoln, turned on his blue lights, and stopped the driver. Carman, who was alone in his cruiser, then called for backup. Carman parked his cruiser behind the Lincoln and approached the car on the driver’s side. He asked the driver, Ellis, for his driver’s license and vehicle registration and could see that Ellis had his driver’s license in his hand. After Carman asked for Ellis’s license and registration, Ellis turned away from Carman and reached into the back of the car, apparently into the back pocket of one of the two front seats. Carman was concerned that Ellis was reaching for a weapon. Carman used the car door handle to open the driver’s side door of the car and ordered Ellis out. Ellis complied, turning back toward Carman and getting out of the car. When Ellis turned back toward Carman after reaching into the back of the car, he had his automobile registration in his hand. Carman took Ellis behind the Lincoln – to move him away from any weapons in the car — and waited for other officers to arrive. While waiting, Carman pat-frisked Ellis for weapons and found none. Carman told Ellis about the report from Colon, and Ellis denied having pointed a handgun at Colon. Ellis also reported that he was currently living in Wilmington.
            After a short time, additional officers arrived, including Sergeant Eriksen. Just before the other officers arrived, Carman asked the police dispatcher to inquire about Ellis with the
 
                                                            -3-
 
Wilmington Police Department. As Carman explained in his testimony, police departments sometimes keep internal notes about individuals, and those notes are not accessible to other police departments through computer searches. Carman sought any such internal notes about Ellis from the Wilmington Police Department. A few minutes later, the dispatcher responded to the request, telling Carman and Eriksen, who had arrived by then, that Wilmington police had noted an incident between Ellis and his girlfriend, in which Ellis’s girlfriend had told police that Ellis had access to firearms. No other information about that incident was available.
            Carman and Eriksen discussed the situation, and Carman then told Ellis that he was being detained and handcuffed him. Eriksen then searched the area within arm’s reach of the driver’s side of the vehicle, performing a so-called “vehicle frisk.” As part of that search, Eriksen looked under the driver’s seat and in the center console. He found a loaded handgun in the console. Police did not search Ellis’s vehicle further at that time. Carman told Ellis that he was under arrest and advised him of his rights as set out in Miranda v. Arizona, 384 U.S. 436, 467-474 (1966). Ellis was then placed in the back of Carman’s cruiser and transported back to the Wakefield Police Department for processing.
            Carman began the booking process at the Wakefield police station. As part of that process, Carman asked Ellis if he had anything in his pockets. Ellis replied that he had heroin, crystal meth, and an orange straw in his pocket. Carman then searched Ellis’s pockets pursuant to the Wakefield Police Department’s internal procedures and found the items described by Ellis.
            After Carman left to transport Ellis to the Wakefield police station for booking, Eriksen requested a tow truck to take the car back to the police station. At that time, Ellis’s car was parked on a public way in Lynnfield near the Market Street shopping center. The car was towed to the Wakefield police station and, sometime thereafter, police obtained a warrant to search it.
 
                                                            -4-
 
Wakefield police searched Ellis’s car pursuant to the search warrant and found additional illegal narcotics.
            On September 22, 2020, the grand jury returned the indictment against Ellis. He was arraigned in this court two days later. He filed the Motion to Suppress on May 10, 2021. This apparently resulted in the postponement of his trial, which at that time was scheduled for May 27, 2021. A hearing on the Motion scheduled for July 28, 2021, was continued at the defendant’s request – apparently to allow the defendant to argue one or more discovery motions instead. A hearing on the Motion scheduled for October 5, 2021, was likewise continued at the defendant’s request, as was a trial scheduled for January 19, 2022. On April 13, 2022, Ellis’s counsel filed the Defendant’s Memorandum of Law in Support of Motion to Suppress Evidence (“Memorandum,” Paper No. 23). A jury trial scheduled for April 15, 2022, was continued by joint request of the parties. On July 13, 2022, the Commonwealth filed its Memorandum in Opposition to Defendant’s Motion to Suppress Evidence (“Opposition,” Paper No. 25). I conducted the hearing on the Motion on July 13, 2022, and took it under advisement.
ANALYSIS
I.          Police had Probable Cause to Arrest Ellis for Assault by Means of a Dangerous Weapon.
            An arrest must be based on probable cause to believe that the suspect is or has been involved in criminal conduct. Commonwealth v. Wardsworth, 482 Mass. 454, 482 (2019). To establish probable cause to arrest, police must have information sufficient “to warrant a prudent person in believing that the individual [arrested] . . . has committed or was committing an offense.” Commonwealth v. Washington, 449 Mass. 476, 481 (2007), quoting Commonwealth v. Storey, 378 Mass. 312, 321 (1979), cert. denied, 446 U.S. 955 (1980). “Probable cause requires ‘more than a suspicion of criminal involvement, something definite and substantial, but not a
 
                                                            -5-
 
prima facie case of the commission of a crime, let alone a case beyond a reasonable doubt.’” Wardsworth, supra at 482, quoting Commonwealth v. Santaliz, 413 Mass. 238, 241 (1992). In making the probable cause determination, law enforcement officers – and courts – may rely on “reasonable inferences and common knowledge.” Commonwealth v. Welch, 420 Mass. 646, 650 (1995).
            To base probable cause to arrest on information provided by an informant, a police officer must demonstrate the informant’s “basis of knowledge” and “veracity.” Commonwealth v. Upton, 394 Mass. 363, 373 (1985), citing Aguilar v. Texas, 378 U.S. 108 (1964) and Spinelli v. United States, 393 U.S. 410 (1969). See also Commonwealth v. Wilkerson, 486 Mass. 159, 170 (2020) (affirming Aguilar/Spinelli test for reliability of informant information). A tip provided by a named, identified person, rather than a faceless informer, is subject to less strict scrutiny than a similar tip provided by an anonymous informant. Commonwealth v. Love, 56 Mass. App. Ct. 229, 232-233 (2002) (requirements of reliability relaxed when applied to tip provided by named, identified informant).
            The Commonwealth maintains that Colon’s report to Carman of having been assaulted by Ellis a week earlier is sufficient to establish probable cause to arrest Ellis. See Commonwealth v. Zorn, 66 Mass. App. Ct. 228, 234 (2006) (crime victim is presumptively reliable), quoting, inter alia, Commonwealth v. Atchue, 393 Mass. 343, 347 (1984). Ellis replies that Carman had insufficient reasonable suspicion – much less probable cause – to stop him because Colon’s report was unreliable and contained stale information.
            A. Probable Cause
            Because Colon reported that he was the victim of Ellis’s threat of violence, his report established his personal knowledge. See Zorn, 66 Mass. App. Ct. at 233 (victim presumptively
 
                                                            -6-
 
meets basis of knowledge test because information based on personal observation). The circumstances of Colon’s report also indicate that it was reliable. Colon provided his full name to Carman, risking retaliation by Ellis in doing so and allowing himself to be located and questioned further by police. See Commonwealth v. Costa, 448 Mass. 510, 516 (2007). Colon provided his statement to Carman in person. See Love, 56 Mass. App. Ct. 233-234. Colon described his interactions with Ellis with sufficient detail to indicate reliability, explaining the circumstances surrounding Ellis’s threat of gun violence one week earlier. See Commonwealth v. Alfonso A., 438 Mass. 372, 376-377 (2003) (level of detail “a factor in the over-all assessment of the informant’s reliability”).
            The defendant’s argument for suppression amounts to a claim that the statement by a named informant that he was assaulted a week earlier by another individual wielding a gun is insufficient, as a matter of law, to establish probable cause.[2] Ellis, however, cites no case for this proposition or one analogous to it. The Appeals Court’s decision in Zorn – a case that addressed probable cause to search the residence of a defendant accused of sexually abusing a child – suggests that Ellis’s position is untenable. In that case, the Appeals Court reasoned:
[T]he victim was more than a named informant – she was the victim of the alleged crime. A  victim  of  a crime presumptively  satisfies  the veracity prong . . . “A serious charge . . . when volunteered by an identified party . . . carries with it indicia
 
--------------------------------------------
 
[2] Ellis’s arguments that developments after the arrest undermine Officer Carman’s probable cause to arrest are inapposite. The issue is whether, at the time of the arrest, the arrest was based on probable cause. See Santaliz, 413 Mass. at 241 (“[P]robable cause exists where, at the moment of arrest, the facts and circumstances within the knowledge of the police are enough to warrant a prudent person in believing that the individual arrested has committed or was
committing an offense.”), quoting Storey, 378 Mass. at 321. Ellis has not directed my attention to any case that stands for the proposition that events that occur, or information that is learned, after the arrest have any bearing on the determination whether, “at the moment of arrest,” id., it was supported by probable cause, and I am not aware of any such case. This is likely because such an approach would be manifestly unworkable.
 
                                                            -7-
 
of reliability,” because the identified person is not a “faceless informer” whose inarticulated self-interest would render the information automatically suspect.
66 Mass. App. Ct. at 234. See also Commonwealth v. Lopes, 455 Mass. 147, 156 (2009) (police radio dispatch based on information provided by named reporter who was relative of the victim “more than satisfied both the basis of knowledge and the veracity test”).
            Ellis further argues that Colon’s report was insufficient to establish a reasonable articulable suspicion – much less probable cause to arrest – because Carman did not independently corroborate it. Corroboration is required in cases in which the information provided to police fails to establish the basis of knowledge and/or veracity of the reporter. As Colon’s report to Carman established both his basis of knowledge and the veracity of the named reporter, no corroboration was required.
            With two exceptions, the cases Ellis cites for the proposition that the absence of independent corroboration dictates suppression involved the reliability and/or basis of knowledge of unnamed informants. See Commonwealth v. Mubdi, 456 Mass. 385, 395-396 (2010) (police corroboration of details of anonymous 911 call established caller’s basis of knowledge and veracity); Commonwealth v. Barros, 435 Mass. 171, 176-177 (2001) (anonymous informant’s tip insufficient to establish reasonable articulable suspicion to stop defendant); Commonwealth v. Upton, 394 Mass. at 377 (anonymous informant’s information insufficiently reliable to establish probable cause for issuance of search warrant). Two other cases on which Ellis relies actually support the Commonwealth’s position. See Lopes, 455 Mass. at 156; Commonwealth v. Riggieri, 438 Mass. 613, 616-617 (2003) (information provided to police dispatcher by reserve member of Westborough police force sufficient to establish reasonable articulable suspicion to stop suspected drunk driver).
 
                                                            -8-
 
            B. Staleness
            Without citation to authority, Ellis also argues that Colon’s information was insufficient to establish probable cause to arrest – or even reasonable articulable suspicion – because it was at least one week old.[3] In general, “[u]nlike probable cause to search, probable cause to arrest, once formed will continue to exist for the indefinite future, at least if no intervening exculpatory facts come to light.” Commonwealth v. Walker, 370 Mass. 548, 560 (1976), quoting United States v. Watson, 423 U.S. 411, 449 (1976) (Marshall, J., dissenting). Cf. Zorn, 66 Mass. App. Ct. at 229 (information first provided by child victim six weeks after alleged sexual assault sufficient to establish probable cause to search defendant’s home). There is no evidence that any exculpatory information emerged in the short period between Colon’s report to Carman and the latter’s arrest of Ellis. That the assault took place sometime before the report, therefore, does not undermine the probable cause to arrest Ellis for the assault.
            In cases involving firearms, appellate courts have held that information that was weeks, or even months, old was not stale. See, e. g., United States v. Neal, 528 F.3d 1069, 1071 (8th Cir. 2008) (one-month old information not stale because confidential informant had, “on several occasions,” seen “stacks of firearms” in defendant’s home); Commonwealth v. Beliard, 443 Mass. 79, 85-86 (2004) (six-week-old information not stale because evidence established “continuous illegal presence of a number of weapons in . . . defendant’s home over extended periods of time”); see also Commonwealth v. Tu T. Huynh, 96 Mass. App. Ct. 1114, 2019 WL 7116137 at * 2-3 (2019) (Rule 1:28 decision) (three-month-old information not stale because
 
--------------------------------------------
 
[3] Ellis also argues that, in a later statement in an interview with police, Colon said that Ellis’s assault had occurred one month, not one week, before he reported it to Carman. For the reasons set out in Note 2, supra, however, this is not relevant to the question whether Carman had probable cause at the time of the arrest.
 
                                                            -9-
 
confidential informant had seen weapons in defendant’s home “several times” over two years prior); Commonwealth v. Fleurant, 2 Mass. App. Ct. 250, 254 (1974) (thirteen-month-old information about machine gun not stale because “informant had provided ‘considerable additional information’ that indicated that . . . firearms remained in the home”).
            In evaluating whether information about contraband is stale, courts assess whether the item is “durable,” meaning that the item is unlikely to be consumed or destroyed. See Commonwealth v. Hart, 95 Mass. App. Ct. 165, 168 (2019). Unlike drugs, illegal firearms are not regularly consumed, discarded, or destroyed. See Fleurant, 2 Mass. App. Ct. at 255. Because firearms are durable, Carman was warranted in concluding that it was unlikely that Ellis destroyed or discarded his gun in the time following his altercation with Colon. See id.
            A second consideration in evaluating whether information is stale is whether “there [is] . . . evidence suggesting that possession of the gun was continuous.” Hart, supra at 168, citing Neal, 528 F.3d at 1071 (informant had, “on several occasions,” seen “stacks of firearms” in defendant’s home); Beliard, 443 Mass. 79, 85-86 (2004) (evidence established “continuous illegal presence of a number of weapons in . . . defendant’s home over extended periods of time”); Fleurant, 2 Mass. App. Ct. at 254 (“informant had provided ‘considerable additional information’ that indicated that . . . firearms remained in the home”). In this case, Colon told Carman to be careful because Ellis “carries a gun.” The information that Colon provided Carman, therefore, was not limited to Ellis’s one-time assault with a firearm. Rather, it gave Carman probable cause to believe that Ellis regularly carried a gun.
 
                                                            -10-
 
            C. The Search of Ellis’s Automobile
            Warrantless searches generally are prohibited. See Commonwealth v. Perkins, 465 Mass. 600, 603 (2013) (“Under the Fourth Amendment to the United States Constitution, warrantless searches are ‘per se unreasonable.’”), quoting Katz v. United States, 389 U.S. 347, 357 (1967). Because the search of Ellis’s car at the scene of the stop was conducted without a warrant, it is “presumptively unreasonable.” Id., citing Katz, 389 U.S. at 357. To avoid suppression of evidence seized in such searches, the Commonwealth has the burden of proving that “the search ‘falls within a narrow class of permissible exceptions’ to the warrant requirement.” Id., quoting Commonwealth v. Antobenedetto, 366 Mass. 51, 57 (1974).
            Because Carman had probable cause to arrest Ellis, the search of his Lincoln was justified as a search incident to arrest and/or under the motor vehicle exception to the warrant requirement. A search incident to a valid arrest is an exception to the warrant requirement. Under that doctrine, police may search an automobile in connection with an automobile stop and resulting arrest of the driver. See Commonwealth v. Starkweather, 79 Mass. App. Ct. 791, 796 (2011) (“Such a warrantless probable cause search of a vehicle is a longstanding and firmly rooted exception to the warrant requirement.”). To be valid, a search incident to arrest must be both based on a valid arrest and at least roughly contemporaneous with it. See Washington, 449 Mass. at 481 (search incident to arrest must be conducted “at the time of the search or at a time ‘substantially contemporaneous’ thereto”), quoting New York v. Belton, 453 U.S. 454 (1981). A search incident to arrest can be justified under either of two rationales. See Commonwealth v. Young, 78 Mass. App. Ct. 548, 554 n.7 (2011). The first, often referred to as the Chimel rationale, see Chimel v. California, 395 U.S. 752 (1969), allows for a search of the area to which the arrestee had access at the time of arrest to prevent the arrestee from securing a weapon or
 
                                                            -11-
 
destroying evidence. Young, supra at 553. The second rationale, first expressly adopted by the United States Supreme Court in Arizona v. Gant, 556 U.S. 332, 343 (2009), and sometimes referred to as the Thornton rationale, allows a search of the area to which the arrestee had access “when it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.” Young, supra at 554 n.7, quoting Thornton v. United States, 541 U.S. 615 (2004). See also Starkweather, 79 Mass. App. Ct. at 797. Carman’s search of Ellis’s Lincoln was permissible under either rationale.
            Another applicable exception to the warrant requirement is the motor vehicle exception, which provides that “[w]hen an automobile is stopped on a public way and probable cause exists to search it, the inherent mobility of the motor vehicle provides the exigency necessary to justify a warrantless search.” Commonwealth v. Holness, 93 Mass. App. Ct. 368, 374 (2018), citing Commonwealth v. Motta, 424 Mass. 117, 124 (1997). Because Carman had probable cause to arrest Ellis for assault and probable cause to believe that he was carrying a gun, the motor vehicle exception independently justifies the search of Ellis’s Lincoln.
II.        Even if Carman Did Not Have Probable Cause to Arrest Ellis, The Search of his Automobile Was Justified As an Investigative Stop
            A.        The Vehicle Stop
            Even if Colon’s report to Carman did not establish probable cause to arrest Ellis – as I conclude in Section I, A, supra, that it did – the report unquestionably established a reasonable articulable suspicion sufficient to justify an investigative stop. To conduct an investigative stop under art. 14 of the Massachusetts Declaration of Rights, police must have “reasonable suspicion that an automobile’s occupant(s) have committed, are committing, or are about to commit a crime.” Commonwealth v. Depiero, 473 Mass. 450, 454 (2016), quoting Commonwealth v. Alvarado, 423 Mass. 266, 268 (1996). Reasonable suspicion must be based on specific,
 
                                                            -12-
 
articulable facts and reasonable inferences drawn therefrom. Id. A hunch will not suffice. Commonwealth v. Quinn, 68 Mass. App. Ct. 476, 480 (2007).
            For the reasons set out in Section I, A, and I, B, supra, respectively, the information Colon provided to Carman indicated both Colon’s basis of knowledge and indicia of reliability and was not stale. It established, at minimum, a reasonable articulable suspicion both that Ellis had assaulted Colon by brandishing a gun at him and that Ellis “carrie[d] a gun.” Thus, Colon’s statement to Carman was sufficient to support a reasonable articulable suspicion both that Ellis had assaulted Colon at least one week earlier and that Ellis had a firearm in his car at the time of the stop. Carman’s investigatory stop of Ellis accordingly was lawful. See id.
            B.        The Exit Order
            Similarly, even if Carman did not have probable cause to arrest Ellis, the officer’s exit order to Ellis was lawful because it was justified by the officer’s objectively reasonable fear for his safety. This fear was based, initially, on Colon’s warning to Carman that Ellis carried a gun. Additionally, after Carman asked for Ellis’s registration, Ellis reached into the back of his car, causing Carman reasonable concern that Ellis could be reaching for the weapon Colon had described. Massachusetts courts have repeatedly held that similar movements by occupants of a car support exit orders, even in the absence of other information. See, e.g., Commonwealth v. Moses, 408 Mass. 136, 138, 140, 142 (1990) (passenger ducking under dashboard made officer reasonably suspect passenger was concealing weapon); Commonwealth v. Prevost, 44 Mass. App. Ct. 398, 401 (1998) (“justifiable concern for the safety of the officers” prompted by passenger’s bending over briefly out of sight and trying to put on coat during traffic stop); Commonwealth v. Ellsworth, 41 Mass. App. Ct. 554, 555 (1996) (exit order would be justified by observation of passenger “bending forward as if to place an object under the seat in front of
 
                                                            -13-
 
him”); Commonwealth v. Heughan, 40 Mass. App. Ct. 102, 104-105 (1996) (rear seat passenger’s bending down out of sight as vehicle stopped was “a motion that reasonably could be taken as placing or retrieving an object beneath the driver's seat”); Commonwealth v. Rivera, 33 Mass. App. Ct. 311, 312, 315 (1992) (observation that passenger bent forward “as if to place something on the floor” contributed to officer’s justification for exit order and pat-frisk); Commonwealth v. Vanderlinde, 27 Mass. App. Ct. 1103, 1104 (1989) (passenger reached into well between seats during stop for speeding; exit order lawful because officers “were justified in fearing that [the passenger’s] purpose in reaching into the well might be to obtain a gun”). Thus, Carman’s exit order was lawfully justified by a reasonable concern for his own safety. See Commonwealth v. Cruz, 459 Mass. 459, 466-467 (2011).
            C.        The Terry-type “frisk” of the Interior of Ellis’s Car
            Even if Carman did not have probable cause to arrest Ellis, his challenge to the so-called “frisk” of his car, during which Eriksen discovered a loaded handgun in the center console, fails. In appropriate circumstances, a Terry-type search, see Terry v. Ohio, 392 U.S. 1 (1968), that is limited in scope and for a protective purpose may extend into the interior of an automobile. Commonwealth v. Silva, 366 Mass. 402, 408 (1974). An officer who does not have probable cause to search an automobile for evidence of a crime or contraband may nonetheless conduct a limited search for weapons if a reasonably prudent officer in the officer’s position would be warranted in the belief that the officer or other persons were in danger. Commonwealth v. Douglas, 472 Mass. 439, 445 (2015), citing Commonwealth v. Daniel, 464 Mass. 746, 752 (2013). Such a search is to be restricted to the area from which it is reasonable to believe the suspect “might gain possession of a weapon.” Commonwealth v. Meneide, 89 Mass. App. Ct. 448, 453 (2016), citing Silva, 366 Mass. at 408. A variety of circumstances insufficient to
 
                                                            -14-
 
support probable cause may still support a Terry-type protective search of the interior of an automobile immediately accessible by its occupants. See, e.g., Commonwealth v. Graham, 78 Mass. App. Ct. 127, 130 (2010) (defendant seen locking glove compartment); Commonwealth v. Myers, 82 Mass. App. Ct. 172, 174, 177 (2012) (defendant moved his body “down, to the right, and out of view”); Commonwealth v. Almeida, 373 Mass. 266, 272-273 (1977) (defendant twisted his body to the right).
            Under the circumstances of this case, even without probable cause to arrest Ellis, the Terry-type protective search of the driver’s side of his car was lawful. From Colon’s statement to Carman, police had a reasonable suspicion that Ellis carried a handgun. See Section I.A., supra. Colon’s statement justified Carman’s reasonable belief that his safety or that of other persons – including Colon – could be in danger when the investigative stop was terminated. See Daniel, 464 Mass. at 752 (protective sweep of interior of car permissible on investigative stop because defendant “is likely to return to the vehicle at the conclusion of the officer’s inquiry.”), quoting Almeida, 373 Mass. at 272; Myers, 82 Mass. App. Ct. at 177 (search of vehicle warranted where the defendant “could have returned to the vehicle and recovered a hidden weapon”). Carman’s reasonable suspicion that Ellis had pointed a handgun at Colon one week earlier, together with Ellis’s unusual movement toward the back of the car when Carman asked for his registration, supported a protective search of the interior area of his automobile that was reachable from the driver’s seat. Additionally, Eriksen’s search of Ellis’s car did not extend beyond that limited scope. Eriksen’s Terry-type search of the reachable areas of Ellis’s car was, therefore, lawful even absent probable cause to arrest.
 
                                                            -15-
 
III.       Inventory Search at the Police Station
            Ellis does not challenge the lawfulness of the search of his person at the police station beyond arguing that the heroin and methamphetamine discovered during that search were “fruits of the poisonous tree.” Commonwealth v. Yusuf, 488 Mass. 379, 394 (2021) (citations omitted). As Carman’s arrest of Ellis and the search of his Lincoln were lawful, Carman’s inventory search of Ellis at the Wakefield police station does not implicate the “fruit of the poisonous tree” doctrine. Cf. Commonwealth v. Lunden, 87 Mass. App. Ct. 823, 826 (2015) (“Under the “‘fruit of the poisonous tree’ doctrine . . ., evidence must be suppressed in circumstances in which it is deemed to have been tainted by a prior search or seizure that was unlawful.”). As Carman’s search of Ellis’s pockets was conducted pursuant to Wakefield’s inventory search procedures, the search was lawful. See Commonwealth v. Seng, 436 Mass. 537, 550 (2002) (“[B]efore a person is placed in a cell, the police, without a warrant, but pursuant to standard written procedures, may inventory and retain in custody all items on the person, including even those within a container, such as a wallet . . . ”).
IV.       Impoundment Search of Ellis’s Automobile
            As with Carman’s inventory search, Ellis does not challenge the lawfulness of the impoundment search of his car except to contend that the narcotics discovered during the search are “fruits of the poisonous tree.” Unlike the search of Ellis’s car and the inventory search of Ellis’s pockets, the search of Ellis’s impounded car was conducted pursuant to a search warrant. Accordingly, Ellis bears the burden of establishing that the narcotics discovered as a result of that search warrant were illegally obtained. See Commonwealth v. Brisson, 31 Mass. App. Ct. 418, 421 (1991) (“[I]n disputing the validity of a search pursuant to a warrant, the defendant bears the burden of establishing that the incriminating evidence was illegally obtained.”). As he
 
                                                            -16-
 
cannot establish that the narcotics seized during the search of his impounded Lincoln were “fruits of the poisonous tree,” Ellis’s argument for suppression of those narcotics fails.
ORDER
For the foregoing reasons, Defendant’s Motion to Suppress is DENIED.
Date: 
/s/David A. Deakin
Associate Justice
September 21, 2022